# UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

———————————————————

In re:                                          )
                                                )
                                                )
BAY VISTA OF VIRGINIA, INC.,                    )
                                                )          Case No. 07-71213-SCS
        *Debtor.*                               )
———————————————————)
                                                )
TOM C. SMITH, JR.,                              )
    CHAPTER 7 TRUSTEE,                           )
                                                )          APN 08-7046-SCS
        *Plaintiff,*                             )
                                                )
    v.                                          )
                                                )
F. WAYNE McLESKEY, JR.,                         )
McLESKEY and ASSOCIATES, LLC,                   )
                                                )          Chapter 7
        *Defendants.*                           )
———————————————————)

## MEMORANDUM OPINION

This matter came on for hearing on August 13, 2008, upon the Motion for Abstention filed by the Defendants, F. Wayne McLeskey and McLeskey and Associates, LLC (collectively, the "McLeskey Defendants"), pursuant to 28 U.S.C. § 1334 ("Abstention Motion"), of the Complaint of Plaintiff Tom C. Smith, Jr., Chapter 7 Trustee ("Trustee") for Bay Vista of Virginia, Inc.  This Memorandum Opinion constitutes the conclusions of law of this Court.  For the reasons set forth herein, the Abstention Motion is denied.

### I.  The Complaint of the Trustee

This bankruptcy case was commenced by the Debtor, Bay Vista of Virginia, Inc. ("Bay Vista") by its filing of a voluntary petition on January 23, 2007, in the United States Bankruptcy Court for the Middle District of Florida (the "Florida Bankruptcy Court"), being designated as

Case Number 07-00527-MGW.  Ms. Lauren P. Greene (the "Florida Trustee") was appointed to

serve as the Debtor's Chapter 7 Trustee while the case was pending in the Florida Bankruptcy

Court.  On June 6, 2007, the Florida Bankruptcy Court transferred venue of this Chapter 7 case

to this Court. The Trustee was appointed to serve as Chapter 7 Trustee in the place of the Florida

Trustee.

      The Trustee filed his Complaint against the McLeskey Defendants on April 16, 2008.

The Complaint seeks the recovery of money allegedly belonging to the Debtor's estate and,

according to the Trustee, therefore qualifies as an "adversary proceeding" pursuant to Rule

7001(1) of the Federal Rules of Bankruptcy Procedure.

      The factual allegations of the Complaint of the Trustee are as follows.  Prior to the

commencement of this Chapter 7 case, Bay Vista was the owner of a 1.075-acre parcel of real

property located in Virginia Beach, Virginia, and commonly known as 3800 Dupont Circle (the

"Property"), which was dedicated as a residential condominium development project.  The

Trustee alleges Bay Vista acquired title to the Property in or about February 2005 by deed from

Mr. Stanley F. Tseng, in his capacity as trustee of the Tseng Trust Agreement No. 2.  As of the

Petition Date, the interest of Bay Vista in the Property was subject to three Deed of Trust liens

in favor of Mr. McLeskey and a fourth Deed of Trust lien in favor of McLeskey and Associates,

LLC (collectively, the "McLeskey Liens").  Each of the McLeskey Liens secured the repayment

of certain corresponding loan indebtedness, which was evidenced by four note instruments

(collectively, the "McLeskey Notes").

      Due to the apparent default of Bay Vista of its repayment obligations under the McLeskey

Notes, the McLeskey Defendants directed that a foreclosure sale (the "Foreclosure Sale") of the

Property be noticed, advertised, and conducted by Samuel I. White, P.C. (the "Foreclosure Trustee"), on October 6, 2005. The state court saga of Bay Vista apparently commenced when Mr. Hung-Lin Wu and the Wu Trust (collectively, the "Wu Parties")[1] filed a bill of complaint to enjoin the Foreclosure Sale in the Circuit Court for the City of Virginia Beach, Virginia ("State Court"). The State Court declined to enjoin the Foreclosure Sale and ordered that the proceeds of the Foreclosure Sale remaining after payment to the McLeskey Defendants be placed in escrow pending the State Court's resolution of the extent, validity, and priority of any other liens on the Property. The Foreclosure Sale was conducted on October 6, 2005.

Following active bidding at the Foreclosure Sale, Mr. McLeskey was the last and highest bidder for the Property, having submitted a winning bid in the amount of $5 million. Mr. McLeskey assigned his winning bid, and the associated right to purchase the Property, to Bay Vista Properties, LLC ("BVP"). On or about November 14, 2005, BVP paid to the Foreclosure Trustee the balance of the $5 million bid amount, and on November 17, 2005, BVP recorded its deed to the Property. Under Virginia law, the Foreclosure Trustee was required to disburse the $5 million Foreclosure Sale proceeds in the following order:

> first, to discharge the expenses of executing the trust, including a reasonable commission to the trustee; secondly, to discharge all taxes, levies, and assessments, with costs and interest if they have priority over the lien of the deed of trust, including the due pro rata thereof for the current year; thirdly, to discharge in the order of their priority, if any, the remaining debts and obligations

---

[1] According to previous pleadings filed in the underlying bankruptcy case, the Wu Parties received a judgment against, among others, Mr. Tseng and Tseng Trust No. 2 in the amount of $11 million in May 2005. The Wu Parties apparently sought to enjoin the Foreclosure Sale pending the conclusion of a fraudulent conveyance action against Mr. Tseng and Tseng Trust No. 2, which had been filed in the United States District Court for the Eastern District of Virginia and sought to have the conveyance of the Property from Tseng Trust No. 2 to Bay Vista declared to be void.

3

secured by the deed, and any liens of record inferior to the deed of trust under which sale is made, with lawful interest; and, fourthly, the residue of the proceeds shall be paid to the grantor or his assigns . . . .

*See* Va. Code Ann. § 55-59.4(A)(3) (2008).

The Trustee additionally alleges that, on or about February 27, 2006, the Foreclosure Trustee filed with the appropriate Virginia Beach Commissioner of Accounts a First Account of Foreclosure Sale Under Deed of Trust (the "Accounting"), disclosing the disbursements made by the Foreclosure Trustee of the Foreclosure Sale proceeds. According to the Accounting, the expenses of the Foreclosure Sale totaled $37,522.30; the delinquent and prorated real estate taxes attributable to the Property as of the date of the Foreclosure Sale totaled $31,334.88; and the combined payoff on the McLeskey Notes (the "McLeskey Payoff") totaled $4,054,927.50. A balance of $876.215.32 (the "Surplus Funds") was apparently available for distribution to the Debtor pursuant to its status as "grantor" with respect to each of the McLeskey Liens.

The Trustee additionally alleges that, notwithstanding the requirements of Code of Virginia, the Foreclosure Trustee did not disburse the Surplus Funds to Bay Vista, but instead interpleaded those funds into the State Court at the direction of the Virginia Beach Commissioner of Accounts ("Interpleader"). The Trustee contends that the apparent purpose of the Interpleader was to enable the State Court to adjudicate competing claims to the Surplus Funds that were being asserted by (i) S.B. Ballard Construction Co. ("SBBCC"), an affiliate of BVP, and (ii) the Wu Parties. On February 19, 2008, this Court entered an order granting relief from the automatic stay pursuant to 11 U.S.C. § 362 to SBBCC, which permitted the State Court to continue the adjudication of the Interpleader and to determine the respective rights of SBBCC and the Wu Parties to the Surplus Funds from the Foreclosure Sale. The State Court issued a

4

letter opinion on May 4, 2008, wherein  it concluded that SBBCC  had a valid mechanic's lien on the Property and had a claim to the Surplus Funds superior to the claim of the Wu Parties.  An order to this effect was entered by the State Court on May 27, 2008.  This Court is advised that the Wu Parties have appealed this decision of the State Court to the Supreme Court of Virginia.

In this Court on September 15, 2007, the Trustee filed a Complaint against BVP, SBBCC, and the Wu Parties to (i) Avoid Transfers, (ii) Challenge Validity, Priority, and Extent of Liens and/or, alternatively, (iii)  to Set Aside Foreclosure Sale, being designated in this Court as Adversary Proceeding No. 07-7076-SCS (the "Ballard/Wu Adversary Proceeding").  Among the various items of relief requested by the Trustee in the Ballard/Wu Adversary Proceeding was a motion for turnover of the Surplus Funds.  The Trustee reached a settlement with BVP and SBBCC in the Ballard/Wu Adversary Proceeding, pursuant to which the parties established a procedural framework for resolving in the State Court the disputed claims of SBBCC to the Surplus Funds.  The Trustee has not yet settled the disputed claims of the Wu Parties to the Surplus Funds, but this Court directed that any adjudication of such disputes be postponed pending a final, unappealable ruling by the State Court in the Interpleader.

The Trustee represents that the terms of his partial settlement with BVP and SBBCC and the deferred adjudication of the issues relating to the Wu Parties are set forth in an Order Approving Settlement and Compromise (the "Ballard Settlement Order") entered in the underlying bankruptcy case and the Ballard/Wu Adversary Proceeding on February 20, 2008. Included among the terms contained in the Ballard Settlement Order is SBBCC's qualified relinquishment to the Trustee (on behalf of Bay Vista's estate) of any and all potential lien rights or interests that SBBCC may hold that are inconsistent with the estate's ability to pursue recovery

5

of the McLeskey Payoff, or any portion thereof.

The Trustee contends that any future reduction of the $4,054,927.50 amount of the McLeskey Payoff will yield a dollar-for-dollar increase in the amount of the Surplus Funds available to Bay Vista's estate, and accordingly, Bay Vista has a contingent property interest in the possible recovery from the McLeskey Defendants of any overstated portion of the McLeskey Payoff. The Trustee asserts that the $4,054,927.50 amount remitted by the Foreclosure Trustee for satisfaction of the McLeskey Notes was overstated by $540,633.63. The Trustee believes that the basis for the assertion by the McLeskey Defendants of the correctness of the original amount of the Surplus Funds is that each of the McLeskey Notes provides to the holder a discretionary right to assess a default rate of interest.[2]

The Trustee asserts the McLeskey Defendants had not issued to Bay Vista any demand for payment, had not treated the underlying obligations as due, and had not issued any formal declaration of default under any of the McLeskey Notes as of October 1, 2003, nor had they ever exercised their discretionary option to invoke the default rate of interest under the McLeskey Notes. Accordingly, the Trustee asserts that $3,514,293.87 correctly reflects the total aggregate balances outstanding under the McLeskey Notes as of the Foreclosure Sale date, with interest and

---

[2] According to the Trustee's Complaint, the provisions of the McLeskey Notes relied upon by the McLeskey Defendants to establish the correctness of the payoff is as follows:

> If payment is not made on demand [or when due] and remains unpaid at the end of twenty (20) calendar days thereafter, or borrower is otherwise in default under the terms and conditions of this note and such default is not cured within twenty (20) days of notice thereof, the prevailing interest rate(s) on the entire indebtedness may be increased by ten percent (10.00%) beginning on the twenty-first day.

Complaint ¶ 29.

late charges computed at the non-default contract rate.

Count One of the Complaint is entitled "Turnover of Property." This count alleges that the Trustee, in his capacity as Chapter 7 Trustee for Bay Vista's estate, has the power to receive and collect on behalf of Bay Vista's estate property belonging to Bay Vista or its value pursuant to 11 U.S.C. § 542, and that under the terms of the McLeskey Notes and of the deed of trust instruments evidencing the McLeskey Liens, Bay Vista is "entitled to recover from the Foreclosure Trustee all sums overpaid on the McLeskey Payoff [in the amount of] $540,633.63." Complaint ¶ 43.

Count Two of the Complaint is entitled "Breach of Contract." The Trustee asserts the McLeskey Defendants breached their contractual duty to Bay Vista under the McLeskey Notes (i) by presenting to the Foreclosure Trustee an incorrect and overstated payoff based upon a retroactive computation of the default rate of interest and late charges; and (ii) by accepting disbursement from the Foreclosure Trustee of such higher portion of the Foreclosure Sale proceeds. The Trustee asserts that, in his capacity as Chapter 7 Trustee, he holds certain "strong-arm" powers specified in 11 U.S.C. § 544(a), and that included among the strong-arm powers is the power and authority to enforce Bay Vista's breach of contract rights and remedies under the McLeskey Notes and to recover on behalf of Bay Vista's estate the overstated portion of the McLeskey Payoff, which is the amount of $540,633.63.

Count Three of the Complaint is entitled "Judicial Estoppel." Under this count, the Trustee asserts the McLeskey Defendants represented to the State Court that the McLeskey Payoff was in the amount of $3,514,293.87, which amount was accepted by the State Court. The Trustee further alleges the "recalculation" of interest and late charges at a retroactively applied

default rate was an intentional action taken by the McLeskey Defendants for the purpose of inflating their recovery from the Foreclosure Sale proceeds. Based upon this, under the "doctrine of judicial estoppel," the McLeskey Defendants are bound by the lesser $3,514,293.87 amount of the McLeskey Payoff, and as Chapter 7 Trustee, the Trustee's strong-arm powers include the power and authority to enforce the doctrine of judicial estoppel to obtain disgorgement from the McLeskey Defendants of the $540,633.63 difference between the stated amount of the McLeskey Payoff and the inappropriately higher amount actually paid to the McLeskey Defendants by the Foreclosure Trustee.

With respect to this Court's jurisdiction to adjudicate the Complaint, the Trustee has asserted:

> 5. This Complaint seeks the recovery of money belonging to Bay Vista's estate, and therefore qualifies as an "adversary proceeding" pursuant to Rule 7001(1) of the Federal Rules of Bankruptcy Procedure.
>
> 6. This Court has referred jurisdiction over the subject matter of the civil proceeding that is described in this Complaint pursuant to 28 U.S.C. §§ 1334(b) and 157(a). Because this Complaint seeks turnover of property belonging to Bay Vista, this Court's referred jurisdiction is exclusive in its scope and force. 28 U.S.C. § 1334(e).
>
> 7. This Complaint gives rise to a "core proceeding" within the meaning of 11 U.S.C. § 157(b)(2)(E) & (O).

Complaint ¶¶ 5-7.

## II. The Abstention Motion

On June 6, 2008, the McLeskey Defendants filed the Abstention Motion pursuant to 28 U.S.C. § 1334. In their motion, the McLeskey Defendants assert that mandatory abstention is required in the instant matter pursuant to 28 U.S.C. § 1334(c)(2). The McLeskey Defendants assert that five criteria are considered to determine if a bankruptcy court must abstain from

consideration of a matter under § 1334(c)(2): (1) a party to the proceeding files a timely motion

to abstain; (2) the proceeding is based upon a state law claim or state law cause of action; (3) the

proceeding is a "non-core, but related to" proceeding (not "arising under" Title 11);[3] (4) the

proceeding is one which could not have been commenced in a federal court absent jurisdiction

under § 1334; and (5) an action is commenced and can be timely adjudicated in state court.  Each

of these factors, the McLeskey Defendants believe, are satisfied by the circumstances here, and

this Court accordingly is required to abstain from adjudication of the Complaint.

Alternatively, the McLeskey Defendants contend that, if this Court is not required to

abstain as to this Complaint under § 1334(c)(2), permissive abstention "would promote the

interests of justice, efficiency and comity with Virginia state courts and would not foreclose the

estate's remedy against any party . . . ."  Abstention Motion, at 7.  The McLeskey Defendants

contend that "[u]nder 28 U.S.C. § 1334(c)(1) the bankruptcy court has discretion to abstain from

hearing a particular non-core proceeding related to a case under title 11 in the interests of justice

or comity with state courts (permissive abstention)."  *Id.* at 8.[4]  The McLeskey Defendants urge

consideration of several factors by this Court in consideration of whether permissive abstention

is appropriate here: "(1) the court's duty to resolve matters properly before it; (2) the

---

[3] The McLeskey Defendants have not filed a proof of claim in the Bay Vista bankruptcy proceeding.

[4] 28 U.S.C. § 1334(c)(1) provides:

Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1) (2008).

predominance of state law issues and non-debtor parties; (3) the economical use of judicial

resources; (4) the effect of remand on the administration of the bankruptcy estate; (5) the

relatedness or remoteness of the action to the bankruptcy case; (6) whether the case involves

questions of state law better addressed by the state court; (7) comity considerations; (8) any

prejudice to the involuntarily removed parties; (9) *forum non conveniens*; (10) the possibility of

inconsistent results; (11) any expertise of the court where the action originated; and (12) the

existence of a right to a jury trial."  The application of these factors, the McLeskey Defendants

contend, "overwhelmingly counsels in favor of abstention."  *Id.*

The Trustee opposes the Abstention Motion.  As his principal argument, the Trustee

asserts that the Court has exclusive jurisdiction to adjudicate the Complaint:

> It is beyond dispute that the underlying purpose of each of the causes of action
> stated in the Complaint is to recover an asset belonging to Bay Vista's
> estate—*i.e.*, the excess Foreclosure Sale proceeds over and above the correct
> amount of the McLeskey Payoff.  The [McLeskey] Defendants, in their
> Abstention Motion, do not argue that the excess Foreclosure Sale proceeds are an
> asset belonging to Bay Vista. Instead, the Defendants only challenge Mr. Smith's
> methodology for calculating the amount of such excess Foreclosure Sale
> proceeds.  This is a singular issue, calling for no more than a legal interpretation
> of the underlying note provisions.
>
> Because the Complaint seeks only recovery of property belonging to [Bay
> Vista]'s estate, this Court has exclusive jurisdiction over the issues to be
> adjudicated in this adversary proceeding. . . .  This statutory assignment of
> exclusive jurisdiction in this Court (by reference from the district court) trumps
> all of the abstention arguments that are now being advanced by the Defendants.

Memorandum in Opposition to Abstention Motion, at 2-3 (hereinafter "Opposition

Memorandum").

The Trustee alternatively argues that the circumstances here do not compel either the

mandatory or permissive abstention of this Court from adjudicating the Complaint.  Accordingly,

10

it falls to the Court to conclude whether it is required or just to abstain from resolution of the

Complaint.

### III.  Conclusions of Law

#### A.  28 U.S.C. § 1334(e): Exclusive Jurisdiction Over Property of the Estate

The initial inquiry to resolve the Abstention Motion must be directed toward the question

of whether the Complaint asserts a question that falls under the exclusive jurisdiction of this

Court.  The Trustee succinctly argues, "[b]ecause the Complaint seeks only recovery of property

belonging to the Debtor's estate, this Court has exclusive jurisdiction over the issues to be

adjudicated in this adversary proceeding."  Opposition Memorandum, at 3.

The McLeskey Defendants are dismissive of the Trustee's argument that the Complaint

is subject to the exclusive jurisdiction of this Court because it seeks a recovery of property of the

estate:

> The Trustee's argument that this adversary is a core matter under 28 U.S.C. §
> 157(b)(2)(A) may be summed up by this stunning quote from his brief: "because
> the Complaint seeks only recovery of property belonging to the Debtor's estate,
> this Court has **exclusive** jurisdiction over the issues to be adjudicated in this
> adversary proceeding."  Plaintiff's Opposition to Abstention at p. 3 (emphasis
> added).  This assertion that this Court has **exclusive** jurisdiction over an action
> that is at base a contract action against a third party that is not even a creditor of
> the estate (indeed Count II is precisely and only that – Count I depends entirely
> upon Count II for its base) is simply ridiculous, perverts the nature of the
> Complaint and ignores relevant jurisprudence.

Reply in Support of Motion for Abstention, at 1-2 (hereinafter "Reply").  An exploration of the

purpose of § 1334(e) is necessary to resolve these contentions.

Section 1334(e)(1) provides:  "The district court in which a case under title 11 is

commenced or is pending shall have exclusive jurisdiction of all the property, wherever located,

of the debtor as of the commencement of such case, and of property of the estate."  While the

11

argument of the Trustee is appealing on an initial reading of the provisions of § 1334(e), courts

interpreting the scope of this statutory provision have largely construed its reach narrowly,

finding as its purpose the direction of the administration of a debtor's assets to one court:

> The function of § 1334(e) is clear—to insure that only one court administers the
> bankruptcy estate of a debtor. Otherwise, the orderly distribution of the assets of
> the debtor to holders of claims against the estate—one of the main functions of
> bankruptcy—could not be accomplished. Congress has chosen to vest exclusive
> jurisdiction over the property of a bankruptcy estate in the "[t]he district court in
> which a case under title 11 is commenced or is pending."

*Williams v. Sears, Roebuck & Co.* (*In re Williams*), 244 B.R. 858, 866 (S.D. Ga. 2000), *aff'd*, 34

F. App'x 967 (11th Cir. 2002). The relationship of § 1334(e) to the provisions of § 1334(b) also

speaks to the intended narrowness of the scope of § 1334(e):

> Section 1334(e) gives bankruptcy courts exclusive jurisdiction over ". . . all the
> property, wherever located, of the debtor as of the commencement of such case,
> and of property of the estate." 28 U.S.C. § 1334(e). The Debtors argue that this
> seemingly broad language gives bankruptcy courts exclusive jurisdiction over the
> [state court] action because money the Debtors believe is owed to them by [the
> plaintiff in the state court matter] is the subject of that civil action and such
> money constitutes property of the estate. However, the exclusivity granted under
> § 1334(e) is actually much more limited. As explained by the Bankruptcy Court
> for the Middle District of Louisiana:

>> While at first blush it might appear that if an action involves
>> property of the estate, a federal forum . . . is the only proper forum
>> for adjudication of claims to such property, 28 U.S.C. § 1334(e)
>> more properly denotes a grant by Congress of *in rem* jurisdiction
>> over property of the debtor as of the commencement of the case
>> and over property of the estate. Section 1334(e) must be
>> harmonized with the provisions of § 1334(b) granting non-
>> exclusive jurisdiction over matters "arising under," "arising in,"
>> and "related to" bankruptcy and/or bankruptcies. An action, *in
>> personam*, that seeks to establish personal liability of the debtor on
>> a claim, but which is not specifically targeted to ownership of, or
>> rights in and to, property of the estate does not fall within this
>> subsection.

*Landry*, 260 B.R. at 781-82. Thus, unless an action involves the actual recovery

of property of the estate, rather than reparations paid for damages suffered, the action may proceed in state court without offending the exclusivity provision. *Id.* at 782.

*AG Indus., Inc. v. AK Steel Corp.* (*In re AG Indus., Inc.*), 279 B.R. 534, 539 (Bankr. S.D. Ohio

2002) (quoting *Landry v. Exxon Pipeline Co.*, 260 B.R. 769, 781-82 (Bankr. M.D. La. 2001)).

The relationship of the exclusivity of jurisdiction under § 1334(e) to the statutory

abstention provisions also must be considered.  The breadth of the interpretation of § 1334(e)

asserted by the Trustee would effectively negate the abstention provisions of § 1334(c):

> A broad  reading of § 1334(e)'s scope is also inconsistent with § 1334(c). Subsection (c) of 1334, the mandatory and discretionary abstention provision, permits, and under some circumstances requires, a district court to abstain from hearing a proceeding even if it falls within the scope of its jurisdiction under 1334(b).  Thus, a district court may decline to hear proceedings with unsettled state law issues or issues that would more properly be heard in another forum, without infringing upon its "exclusive and non-delegable control over the administration of an estate within its possession."  *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 483, 60 S.Ct. 628, 84 L.Ed. 876 (1940); H.R. Rep. No. 595, 95th Cong., 1st Sess. 446 (1977), U.S. Code & Cong. Admin. Newsp. 6401 (citing *Thompson* favorably).  An expansive reading of § 1334(e) would render § 1334(c) virtually useless. "Exclusive" jurisdiction would preclude abstention when most appropriate. Most debtor complaints with state law issues could not be heard by a state court because they would be estate property subject to the exclusive jurisdiction of the district court in which the debtor's bankruptcy case is pending.  Moreover, district courts are required to abstain under § 1334(c)(2) from proceedings that may include estate property, but state courts could not hear these proceedings because they are within the exclusive province of these same district courts.  This illogical result could not have been the intent of § 1334.

*Noletto v. NationsBanc Mortgage Corp.* (*In re Noletto*), 244 B.R. 845, 852 (Bankr. S.D. Ala.

2000). *Accord Bank United v. Manley*, 273 B.R. 229, 247-48 (N.D. Ala. 2001); *Lee v. Miller*, 263

B.R. 757, 761 (S.D. Miss. 2001) ("[T]he defendants contend that because § 1334(e) gives the

district court where a Title 11 case is commenced exclusive jurisdiction over the *res* of the

bankruptcy estate, this court may not abstain and remand this case back to state court.  The

13

defendants, however, offer no authority which holds that § 1334(e) supercedes the "original but not exclusive" jurisdiction language of § 1334(b) or that § 1334(e) precludes abstention and remand under § 1334(c) and § 1452(b)."); *see also Reed v. Mississippi Farm Bureau Mut. Ins. Co.*, 299 B.R. 804, 808 (S.D. Miss. 2003); *Sago v. Wal-Mart Stores, Inc.*, 280 F. Supp. 2d 578, 588 (S.D. Miss. 2003).[5]

The decisions relied upon by the Trustee to support his contention § 1334(e) provides for exclusive jurisdiction of this Court here are factually distinguishable from the instant case. In *Kane Enterprises v. MacGregor (USA) Inc.*, 322 F.3d 371 (5th Cir. 2003), the question answered by the Court involved whether an action by a sub-subcontractor to collect the retainage owed to a subcontractor from a contractor could be removed to and retained in a federal district court other than the district in which the subcontractor had filed for bankruptcy. In concluding the matter could not proceed in a district other than where the subcontractor's bankruptcy proceeding

---

[5]  The necessity to construe the exclusivity provisions of § 1334(e) in light of the jurisdictional limitations of the bankruptcy court after the decision of the United States Supreme Court in *Marathon Pipe Line* also compels a narrow interpretation of this provision:

This Court's jurisdiction over this particular cause of action does not issue from section 1334(e), which must be interpreted in light of *Northern Pipeline v. Marathon Pipe Line*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) to exclude a proceeding wherein there exists a bona fide dispute under state law as to liability. *Marshall v. Michigan Dep't of Agric.*, 118 B.R. 954, 962 (W.D. Mich.1990). Section 542 provides the means for obtaining possession of property of the bankruptcy estate. A proceeding for turnover of estate property is denominated a core proceeding by 28 U.S.C. § 157(b)(2)(E). An unliquidated, disputed state law cause of action, however, is a non-core, related proceeding and is not the proper subject of a turnover proceeding. *In re Charter Co.*, 913 F.2d 1575, 1579 (11th Cir. 1990). "Clearly, Congress envisioned the turnover provision of § 542 of the Code, 11 U.S.C. § 542 (1988), to apply to tangible property and money due to the debtor without dispute which are fully matured and payable on demand." *Id.*

*Roddam v. Metro Loans, Inc.* (*In re Roddam*), 193 B.R. 971, 977 n.7 (Bankr. N.D. Ala. 1996).

14

was pending, the Fifth Circuit Court of Appeals simply reaffirmed the exclusivity of the

bankruptcy court to adjudicate claims  to the debtor's property:

> The retainage due to [the subcontractor] from [the contractor], however, is
> property of [the subcontractor's] bankruptcy estate. 11 U.S.C. § 541; *In re Glover
> Constr. Co.*, 30 B.R. 873 (W.D. Ky. 1983). The district in which a chapter 11
> petition is filed has exclusive jurisdiction over the property of the estate. 28
> U.S.C. § 1334(e). Thus, the court properly dismissed the [sub-subcontractor's]
> complaint, because the Southern District of Mississippi has exclusive jurisdiction
> over the retainage.

*Id.* at 374. In *Whitaker v. Interstate Commerce Commission* (*In re Olympia Holding Corp.*), 141

B.R. 443 (Bankr. M.D. Fla. 1992), also relied upon by the Trustee, the court confronted a similar

issue where the Interstate Commerce Commission was enjoined from interfering with a

bankruptcy trustee's attempts to recover alleged freight undercharges from shippers.  The court

again simply recognized that the "ICC's actions, Order, and threatened cease and desist order

attempt to usurp jurisdiction over property of the Olympia estate, which is originally and

exclusively before this Court." *Id.* at 446.  Neither decision stands for the proposition asserted

by the Trustee that § 1334(e) provides this Court with *exclusive* jurisdiction over the Complaint.[6]

Judge Posner has succinctly recognized the import of § 1334(e):

Section 1334(d) [now 1334(e)] gives the bankruptcy court control of all the
property. Creditors who want to enforce their liens have to do so in that court

---

[6] A decision located by the Court that considered the exclusivity of bankruptcy court
jurisdiction in the context of a debtor's claim to surplus foreclosure proceeds is *Brown v.
Dellinger* (*In re Brown*), 22 B.R. 844 (Bankr. N.D.N.Y. 1982), *aff'd*, 39 B.R. 83 (N.D.N.Y.
1984), and 734 F.2d 119 (2d Cir. 1984).  There the court determined a New York state court
lacked jurisdiction over surplus foreclosure proceeds claimed by the debtor after the bankruptcy
filing of the debtor because of the exclusivity provisions of § 1334.  *Id.* at 849-50.  As such, this
conclusion is consistent with the other interpretations of § 1334(e) that hold the purpose is to
provide the bankruptcy court with exclusive *in rem* jurisdiction over the assets of a debtor once a
bankruptcy filing occurs and provides no support for the Trustee's contention here.  *See also In
re First Assured Warranty Corp.*, 383 B.R. 502, 541-42 (Bankr. D. Colo. 2008).

> regardless of the location of the creditor or the property.  This is the entire
> meaning of the statute, . . . and it has no application to a dispute between the
> debtor and its insurers over the scope of coverage.

*In re U.S. Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997) (internal citations omitted).

Accordingly, the provisions of 28 U.S.C. § 1334(e) do not end the analysis by this Court as to

whether it is required or just to abstain from adjudication of the Complaint.

B.  Must This Court Abstain from Adjudication of the Complaint Pursuant to 28 U.S.C. §

1334(c)?

    The rejection of the argument of the Trustee that 28 U.S.C. § 1334(e) precludes abstention

accordingly mandates an examination as to whether the circumstances here require abstention.

The determination must necessarily begin with an examination of 28 U.S.C. § 1334(c)(2), which

provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or
> State law cause of action, related to a case under title 11 but not arising under title
> 11 or arising in a case under title 11, with respect to which an action could not
> have been commenced in a court of the United States absent jurisdiction under
> this section, the district court shall abstain from hearing such proceeding if an
> action is commenced, and can be timely adjudicated, in a State forum of
> appropriate jurisdiction.

28 U.S.C. § 1334(c)(2) (2008).  Judge Tice of this Court has delineated the criteria to be

considered to determine if mandatory abstention is required in a particular matter:

> Section 1334(c)(2) basically presents a six-part test for determining whether
> mandatory abstention applies:
>
> (1) A party to the proceeding must file a timely motion to abstain;
> (2) The proceeding is based on a state law claim;
> (3) The proceeding is a "non-core, but related to" proceeding;
> (4) There is no basis for federal court jurisdiction other than Section 1334;
> (5) An action is commenced in state court; and
> (6) The state court action can be timely adjudicated.

16

*Seven Springs, Inc. v. Abramson* (*In re Seven Springs, Inc.*), 148 B.R. 815, 817 (Bankr. E.D. Va. 1992). In determining whether to abstain, if the Court finds that any element of the test set out above has not been satisfied, then it must find that mandatory abstention is improper. *In re Butterfield*, 339 B.R. 366, 373 (Bankr. E.D. Va. 2004). The first two factors are satisfied here. The Abstention Motion was timely made, being filed fifty-one days subsequent to the filing of the Complaint.[7] It is also undisputed the claim asserted in the Complaint is a state law proceeding.[8] However, according to the Trustee, the remaining factors compel a conclusion that mandatory abstention is unnecessary here. Accordingly, these factors must be analyzed to resolve whether § 1334(c)(2) requires this Court to abstain from adjudication of the Complaint.

1. Is the Complaint a "Core" Proceeding?

The bankruptcy court is not required to abstain if the matter is a core proceeding. *Seascape at Wrightsville Beach, LLC v. Mercer's Enters., Inc.* (*In re Mercer's Enters., Inc.*), 387 B.R. 681, 684 (Bankr. E.D.N.C. 2008) (citing *Cox v. Cox* (*In re Cox*), 247 B.R. 556, 569 (Bankr. D. Mass. 2000)). This Court previously explored the determination of what constitutes a "core proceeding" in *Hudgins v. Shah* (*In re Systems Engineering & Energy Management Associates, Inc.*), 252 B.R. 635 (Bankr. E.D. Va. 2000) (hereinafter "*SEEMA*"):

The Fourth Circuit Court of Appeals has recently, in *Apex Express*, provided

---

[7] The Complaint was filed on April 16, 2008. This Court, with the consent of the Trustee, entered an order on May 21, 2008, extending the deadline for the McLeskey Defendants to file responsive pleadings to the Complaint to June 6, 2008. The Abstention Motion was filed by the McLeskey Defendants on June 6, 2008.

[8] The Trustee writes in his Opposition Memorandum: "Mr. Smith . . . concedes . . . that the Defendants have satisfied the first two criteria of the Seven Springs test: (1) the Abstention Motion is timely filed and (2) this adversary proceeding is based primarily on state law." Opposition Memorandum, at 5.

guidance as to how § 157 should be construed in determining whether a proceeding is core or non-core.  In that case, a debtor sought from a third party for penalties the third party allegedly owed for late payment of freight charges under the Debtor's tariffs.  The district court followed the bankruptcy court in holding that the collection proceeding initiated in the bankruptcy court was a "core" proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (E), and (O).

The Fourth Circuit Court of Appeals disagreed.  As a general matter, the court outlined the breadth with which § 157 should be interpreted:

> On the one hand, a broad reading of the literal terms of the statutory text could lead to the result that courts treat just about every dispute as "core."  *See, e.g.*, 28 U.S.C.A. § 157(b)(2)(A) ("matters concerning the administration of the estate"); § 157(b)(2)(O) ("other proceedings affecting liquidation of the assets of the estate").  But, the statute must be interpreted keeping in mind (1) that Congress passed it in response to the defects revealed by *Northern Pipeline* [i.e. *Marathon*], and (2) that *Northern Pipeline* remains good law, even if perhaps narrowed by subsequent decisions (internal citation omitted).

*See Apex Express*, 190 F.3d at 631. After noting the split of various courts on whether "accounts receivable" claims against strangers to the bankruptcy proceeding are core or non-core, *see id.*, the court found several bases to conclude that such claims were non-core.

Looking first to the holding in *Marathon*, the court found that such claims fell squarely under *Marathon's* dictates in that "Congress may not force non-consenting claimants whose claims are based on state-created private rights into non-Article III courts."  *Id.* at 632.  The court also found fault with the logic courts use to find such contract claims are "core:"

> The main justification supplied by these courts is that because the accounts receivable are in some sense the property of the bankruptcy estate, and because the outcome of the claim will affect the bankruptcy estate (by altering its size), then the claims are "core" . . . .  But, under this logic any claim including a potential money judgment would be considered core, even the precise contract claim at issue in *Northern Pipeline.*  Thus, the rationale used by these courts would swallow the rule established by *Northern Pipeline.*

*Id.* at 632 (internal citations omitted). Finally, the court looked to the public rights/private rights distinction, which it found was a key aspect of the *Marathon*

decision:

> The Court in *Northern Pipeline* observed that "the restructuring of
> debtor-creditor relations, which is at the core of the federal
> bankruptcy power" is a public right. . . . Because the public right
> nature of bankruptcy proceedings gives Congress the power to
> assign judicial functions to non-Article III bankruptcy courts, the
> core/non-core distinction should depend upon the connection the
> claim has to this public right. The type of dispute at issue only has
> some theoretical and indirect impact on the public act of debt
> restructuring. But, the dispute itself is entirely separate and
> entirely private—the contract-based liability between two private
> parties. . . . The resolution of the present private right dispute is
> hardly at the core of restructuring debtor-creditor relationships.
> To be faithful to *Northern Pipeline,* we must treat such a private
> rights dispute as a non-core matter.

*Id.* (internal citations omitted).

*SEEMA*, 252 B.R. at 641-42 (quoting *Humboldt Express, Inc. v. Wise Co.* (*In re Apex Express

Corp.*), 190 F.3d 624, 631-32 (4th Cir. 1999)).

The status of the Trustee as a plaintiff advancing claims in his official capacity, including

"strong-arm" claims pursuant to 11 U.S.C. § 544, is of no moment in the determination of the

exclusivity of this Court's jurisdiction.  As observed in *SEEMA*:

> The Trustee has argued that the claims asserted in this adversary proceeding are
> core proceedings, in part, because they represent claims the Trustee advances in
> his official capacity pursuant to 11 U.S.C. § 544.  This argument is misplaced.
> In determining whether a proceeding is core or non-core, "both the form and
> substance of the proceeding must be examined."  The critical focus of the inquiry
> as to whether a proceeding is core is "not on who is bringing the lawsuit but on
> what the lawsuit is about."  Nothing  within the provisions of § 544 suggests an
> independent basis for establishment of core jurisdiction, and legion are the
> various decisions which have concluded that a claim a bankruptcy trustee, debtor
> or debtor in possession has asserted is a non-core proceeding.  This Court instead
> must examine the nature of each and every claim of the Trustee to discern
> whether core jurisdiction exists.

*SEEMA*, 252 B.R. at 643-44 (internal citations omitted).  A non-exclusive list of matters that are

19

subject to the "core" jurisdiction of the bankruptcy court is set forth in 28 U.S.C. § 157.[9]

The Trustee asserts the Complaint is a "core" proceeding:

> This adversary proceeding is, at its most basic, a suit to enforce estate rights and
> property interests arising in the lien and foreclosure context.  In addition, the
> underlying remedial aspects of Mr. Smith's claims are essentially in the nature of
> requests for restitution or for specific performance. Based upon these inherent
> characteristics, Mr. Smith's claims clearly qualify as core proceedings.

Opposition Memorandum, at 6.  The Trustee additionally asserts:

> In substance, these claims each involve a request for turnover of property of the
> Debtor's estate.   28 U.S.C. § 157(b)(2)(E).   They also directly affect the

---

[9]  28 U.S.C. § 157(b)(2) provides, in pertinent part:

Core proceedings include, but are not limited to—
(A) matters concerning the administration of the estate;
(B) allowance or disallowance of claims against the estate or exemptions from
property of the estate, and estimation of claims or interests for the purposes of
confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or
estimation of contingent or unliquidated personal injury tort or wrongful death
claims against the estate for purposes of distribution in a case under title 11;
(C) counterclaims by the estate against persons filing claims against the estate;
(D) orders in respect to obtaining credit;
(E) orders to turn over property of the estate;
(F) proceedings to determine, avoid, or recover preferences;
(G) motions to terminate, annul, or modify the automatic stay;
(H) proceedings to determine, avoid, or recover fraudulent conveyances;
(I) determinations as to the dischargeability of particular debts;
(J) objections to discharges;
(K) determinations of the validity, extent, or priority of liens;
(L) confirmations of plans;
(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims
brought by the estate against persons who have not filed claims against the estate;
(O) other proceedings affecting the liquidation of the assets of the estate or the
adjustment of the debtor-creditor or the equity security holder relationship, except
personal injury tort or wrongful death claims; and
(P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

28 U.S.C. § 157(b)(2) (2008).

liquidation of such estate.  28 U.S.C. § 157(b)(2)(O).  In addition, although not expressly stated in the Complaint, the inherent dispute between Mr. Smith and the Defendants regarding the proper methodology for calculating the McLeskey Payoff necessarily implicates the "extent" of the underlying McLeskey Liens. Thus, the subject claims further qualify as core proceedings under the express language of subpart (K) of §157(b)(2).  *See* 28 U.S.C. § 157(b)(2)(K) ("[c]ore proceedings include . . . determinations of the validity, extent or priority of liens").

Opposition Memorandum, at 7.  The McLeskey Defendants reject these characterizations of the

claims of the Trustee:

> What the Plaintiff is seeking is an award of damages for an alleged breach of contract as a remedy for the asserted non-bankruptcy state law cause of action. The Trustee's gratuitous inclusion of a turnover request as part of his requested remedy does not a core proceeding make.
>
> The Plaintiff also asserts that "[i]n substance, these claims each involve a request for turnover of property of the Debtor's estate."  (Opposition to Abstention, p. 7).  Setting aside the absurdity of characterizing a "judicial estoppel" claim as a turnover action, the Trustee's semantic characterization of the claim at issue as "turnover" is not dispositive.
>
> This Court must look behind that characterization to determine the true nature of the action.  *In re Porter-Hayden Co.*, 304 B.R. 725, 732 (Bankr. D. Md. 2004).  And the true nature of this action is the state law breach of contract claim that is set forth in Count II.  The Trustee expressly concedes as much in his brief, stating that "[e]ach of the causes of action stated by Mr. Smith in his Complaint is founded in contract (i.e., the underlying note provisions governing the defendants' secured claims against Bay Vista)."  (Opposition to Abstention at p. 18).

Reply, at 4-5.

An analysis of each of the counts of the Complaint must be undertaken to conclude

whether or not the claims of the Trustee are "core" or "non-core."  *Dunmore v. United States*, 358

F.3d 1107, 1114 (9th Cir. 2004) (citing *Halper v. Halper*, 164 F.3d 830, 839 (3d Cir. 1999)).

a.  Count One: Turnover of Debtor Property

Count One of the Complaint states that the Trustee has the power to receive and collect

21

on behalf of Bay Vista's estate property belonging to Bay Vista or its value pursuant to 11 U.S.C.

§ 542, and that under the terms of the McLeskey Notes and of the deed of trust instruments

evidencing the McLeskey Liens, Bay Vista is entitled to recover the sum of $540,633.63 that was

overpaid on the McLeskey Payoff.

Judge Merhige has examined the nature of turnover actions as constituting "core"

proceedings under the Bankruptcy Code:

> Section 542(b) creates an action for turnover of matured debts owed to a bankrupt estate. These may be, for example, debts owed for accounts receivable, for judgments already obtained or for monies previously held in trust or in escrow. *See In re Willington Convalescent Home, Inc.*, 850 F.2d 50, 52 n.2 (2d Cir. 1988) (action to recover judgment for services sold and delivered on account is within scope of Section 542(b)); *Nuckols and Assocs. v. Bouchard Transp. Co.*, 109 B.R. 294, 295 (Bankr. S.D. Ohio 1989) (claim for ordinary, overdue business account—specific in its terms and date due—is turnover action even if defendant may assert valid defenses to the debt); *Acolyte Elec. Corp. v. City of New York*, 69 B.R. 155, 172 (Bankr. E.D.N.Y. 1986) (action may be considered a turnover proceeding within Section 542 only where it seeks "the collection rather than creation of, recognition or liquidation of a matured debt"). In contrast, actions for damages based on state law claims are not within the scope of the statute. *See Interconnect Telephone Servs. v. Farren*, 59 B.R. 397, 400-01 (S.D.N.Y. 1986) (state-law based action is not for turnover simply because it seeks recovery by the estate). As NEI emphasizes, a debt may be both mature for purposes of this provision and nonetheless disputed by the defendant. *See In re Willington Convalescent Home, Inc.*, 850 F.2d 50, 52 n.2 (2d Cir. 1988). In other words, for an action to be a turnover proceeding, it is not relevant that the defendant disputes the existence of the debt by, perhaps, denying the complaint's allegations, as long as those allegations state the existence of a mature debt.[10]

---

[10] Judge Markell has suggested the existence of a dispute can prevent the characterization of a turnover proceeding as a "core" proceeding:

> Section 542(b) requires for turnover that the amounts payable must be "matured, payable on demand, or payable on order." Settled and controlling law holds that the presence of an active dispute over the amount owed takes the action out of the turnover area; one cannot shortcut a breach of contract action with a turnover demand. *MCI Telecommunications Corp. v. Gurga* (*In re Gurga*), 176 B.R. 196, 199 (B.A.P. 9th Cir. 1994) ("turnover proceedings involve return of undisputed funds.

22

*Nat'l Enters. v. Koger P'ship* (*In re Nat'l Enters., Inc.*), 128 B.R. 956, 959 (E.D. Va. 1991).

Judge Derby has further refined this analysis:

> The characterization of a lawsuit as a proceeding to compel turnover, therefore,
> is not dispositive of whether the action constitutes a core proceeding; rather, this
> court  must look behind the characterization to determine that in fact a turnover
> proceeding is warranted.  Consequently, the determination of whether a claim
> qualifies as a turnover proceeding turns on whether Plaintiff's complaint alleges
> the existence of a mature debt. "Matured" refers to "debts that are presently
> payable, as opposed to those that are contingent and become payable only upon
> the occurrence of a certain act or event."

*Porter-Hayden Co. v. First State Mgmt. Group, Inc.* (*In re Porter-Hayden Co.*), 304 B.R. 725,

732 (Bankr. D. Md. 2004) (internal citations omitted).[11]  *See also Hassett v. BancOhio Nat'l Bank*

---

. . . Here, the amounts, if any, owed to Source by MCI are in dispute and this dispute
rests on breach of contract issues. . . . Breach of contract actions are noncore
claims.") (emphasis in original). *See also Savage & Associates, P.C., v. Mandl* (*In
re Teligent, Inc.*), 325 B.R. 134, 137-38 (Bankr. S.D.N.Y. 2005) ("well-settled law
. . . that § 542(b) cannot be used to recover a disputed pre-petition debt"); *Hirsch v.
London S.S. Owners' Mut. Life Ins. Ass'n Ltd.* (*In re Seatrain Lines, Inc.*), 198 B.R.
45, 50 n.7 (S.D.N.Y. 1996) ("It is settled law that the debtor cannot use the turnover
provisions to liquidate contract disputes or otherwise demand assets whose title is in
dispute."); *J.T. Moran Fin. Corp. v. American Consol. Fin. Corp.* (*In re J.T. Moran
Fin. Corp.*), 124 B.R. 931, 938 (S.D.N.Y. 1991) ("Where, as here, the court must
resolve whether or not the debt claimed is due, the action to collect the disputed
funds cannot be regarded as a turnover proceeding under the core jurisdiction of the
bankruptcy court.") (report and recommendation of Schwartzberg, B.J.).

*Leonard v. Optimal Payments Ltd.* (*In re Nat'l Audit Def. Network*), 332 B.R. 896, 911 (Bankr. D.
Nev. 2005).

[11]  The requirement that a debt be "matured" in order to qualify as a turnover proceeding
is statutory in nature:

> Except as provided in subsection (c) or (d) of this section, an entity that owes a debt
> that is property of the estate and that is matured, payable on demand, or payable on
> order, shall pay such debt to, or on the order of, the trustee, except to the extent that
> such debt may be offset under section 553 of this title against a claim against the
> debtor.

(*In re CIS Corp.*), 172 B.R. 748, 759 (S.D.N.Y. 1994) (citing *Acolyte Elec. Corp. v. City of New York*, 69 B.R. 155, 172 (Bankr. E.D.N.Y. 1986)) ("An action for turnover of property is core 'when its purpose is the collection rather than the creation, recognition or liquidation of a matured debt.'"); *United States v. Peoples Bank & Trust Co.* (*In re Gulf Apparel Corp.*), 140 B.R. 593, 596 (M.D. Ga. 1992) ("[T]he parties themselves have agreed on the amount owed; thus, the debt is matured.  Gulf and the Bank, in this action, are merely attempting to collect the debt.").

It appears few decisions have considered the issue of "core" proceedings in a factual context similar to the matter at bar.  In *Kepley Broscious, PLC v. Ahearn* (*In re Ahearn*), 318 B.R. 638 (Bankr. E.D. Va. 2003), this Court considered whether abstention was mandatory where an interpleader action in the Virginia state court was removed to the bankruptcy court.  In the removed action, a foreclosure trustee interpleaded proceeds from a foreclosure sale, which proceeds were claimed by a creditor and the debtor's trustee in bankruptcy.  Once removed to bankruptcy court, the creditor claimant moved the bankruptcy court to abstain.  In concluding mandatory abstention did not apply, Judge Tice found "[b]ecause the instant interpleader action involves a claim by the bankruptcy trustee to a possible asset of the estate, the court treats the action as a core proceeding as defined in 28 U.S.C. § 157(b).  Therefore, the mandatory abstention provisions of § 1334(c)(2) are not applicable." *In re Ahearn*, 318 B.R. at 644.

A number of decisions have considered actions for overpayments.  These decisions, for the most part, have concluded actions to recover overpayments are non-core.  *See, e.g.*, *Dunmore v. United States*, 358 F.3d 1107, 1115 (9th Cir. 2004) (tax refund claims are "non-core" proceedings).  *But see Federated Dep't Stores, Inc. v. White Flint Ltd. P'ship* (*In re Federated*

_____

11 U.S.C. § 542(b) (2008).

24

*Dep't Stores, Inc.*), 240 B.R. 711, 718 (Bankr. S.D. Ohio 1999) (claim asserted by debtor for

overpayments of rent and common area maintenance charges was a core proceeding because the

matter "boils down to a claim by a creditor for pre-confirmation § 365 payments and a

counterclaim for alleged overpayments made by the estate"); *Caldor Corp. v. S Plaza Assocs.*

*L.P.* (*In re Caldor, Inc.-NY*), 217 B.R. 121, 128 (Bankr. S.D.N.Y. 1998) (action to recover

overpayments of rent was core "because . . . [the creditor-landlord] subjected itself to our core

jurisdiction by filing a proof of claim").[12]

Applying all of these teachings, it appears Count One of the Complaint asserts a "non-

core" action.  At first blush, it is compelling to characterize the claim of Count One as sounding

in the nature of determination of the "extent" of a lien on property of the debtor, as the Trustee

advocates. However, as a temporal matter, there is no existing lien nor does the Property

presently constitute "property of the estate," as the Property was foreclosed upon and title

transferred from Bay Vista prior to the bankruptcy filing.  Unlike the circumstances in *In re*

*Ahearn*, discussed *supra*, here there is no specific *res* of money that is the property of the debtor

as surplus proceeds from a foreclosure sale that are available for distribution to the debtor's estate

subject to the adjudication of competing creditor claims to this *res*.[13]  Further, it appears the claim

---

[12]  As noted earlier, the McLeskey Defendants have not filed a proof of claim in this
bankruptcy nor have they asserted any claim against Bay Vista.

[13]  The factual circumstances of *In re Ahearn* are virtually identical to that of the
resolution of the competing claims at issue here to the actual Foreclosure Sale proceeds paid into
the State Court by the Foreclosure Trustee, which this Court earlier granted relief to SBBCC to
conclude the then-pending litigation in State Court.  The Court is confident that the adjudication
of the debtor's entitlement to the deposited *res* of surplus funds would have been within the
"core" jurisdiction of the bankruptcy court.  However, the circumstances of the Trustee's claim
now asserted against the McLeskey Defendants are substantially different as there is no *res* of
monies or property which belongs to Bay Vista subject to other competing claims to the *res*.  In

in Count One of the Trustee is not a "mature" claim, as necessary to support a true action for

turnover. Rather, the claim in Count One of the Trustee sounds more nearly as an action whose

purpose is creation of a claim. Finally, the action asserted in Count One by the Trustee, given

its admitted contractual basis,[14] seems to ignite the precise concerns expressed by the Fourth

Circuit Court of Appeals in *Apex Express*, discussed *supra*, that including a potential money

judgment as a core proceeding such as asserted here would "swallow the rule established by

*Northern Pipeline*." *Humboldt Express, Inc. v. Wise Co.* (*In re Apex Express Corp.*), 190 F.3d

624, 632 (4th Cir. 1999). Accordingly, assessing both form and substance of Count One, it

appears the action asserted by the Trustee is not in the nature of a true "turnover" proceeding and

is properly characterized as a "non-core" proceeding.[15]

---

the instant matter, the Trustee instead seeks to establish a claim against the McLeskey
Defendants.

   [14] In the Complaint, Count One asserts "[u]nder the terms of the McLeskey Notes and of
the deed of trustee evidencing the McLeskey Liens, the Debtor is entitled to recover . . . all sums
overpaid on the McLeskey Payoff . . . ." Complaint ¶ 43.

   [15] The Complaint does properly state a claim subject to the "related to" jurisdiction of
this Court.

>   In *Valley Historic*, the Fourth Circuit reaffirmed that the Third Circuit's *Pacor* test
>   is used in this circuit to determine whether "related to" jurisdiction exists. "In short,
>   'the test for determining whether a civil proceeding is related to bankruptcy is
>   whether the outcome of that proceeding could conceivably have any effect on *the
>   estate* being administered in bankruptcy.'" *Valley Historic*, 486 F.3d at 836 (quoting
>   *Owens-Ill., Inc. v. Rapid Am. Corp.* (*In re Celotex Corp.*), 124 F.3d 619, 625 (4th
>   Cir. 1997)) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984))
>   (emphasis added). Moreover, "[a]n action is related to bankruptcy if the outcome
>   could alter the debtor's rights, liabilities, options or freedom of action (either
>   positively or negatively) and [it] in any way impacts upon the handling and
>   administration of the bankruptcy estate." *Id.* (quoting *Rapid Am. Corp.*, 124 F.3d at
>   625-26).

*SunTrust Bank v. Roberson* (*In re Baseline Sports, Inc.*), ___ B.R. ___, Case No. 06-71505-SCS,

b. Count Two: Breach of Contract

The characterization of Count Two of the Complaint as "core" or "non-core" presents a less arduous analysis than that of Count One. Count Two plainly asserts a right on the part of the Trustee "to enforce the Debtor's breach of contract rights and remedies under the McLeskey Notes." Complaint ¶ 47. This Count asserts only a state-law based contractual claim involving only the "private rights" of the debtor and its creditors, the McLeskey Defendants. This Count asserts a claim that is properly characterized as a "non-core" proceeding but subject to the "related to" jurisdiction of this Court.

c. Count Three: Judicial Estoppel

In Count Three of the Complaint, the Trustee asserts the McLeskey Defendants represented to the State Court that the McLeskey Payoff was in the amount of $3,514,293.87, which amount was accepted by the State Court, and that under the principles of judicial estoppel, the McLeskey Defendants are bound by this representation. In his Opposition Memorandum, the Trustee asserts "[a]s properly pled by Mr. Smith, his third count of judicial estoppel is in substance a claim of waiver—again an equitable concept." Opposition Memorandum, at 17.

It is unclear exactly what legal theory of recovery is asserted by the Trustee in Count Three. "Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation." *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28-29 (4th Cir. 1995) (citing *United Virginia Bank v. B.F. Saul Real Estate Inv. Trust*, 641 F.2d 185,

---

Adv. Proc. No. 07-07105-SCS, 2008 WL 3152991, at *15 (Bankr. E.D. Va. Aug. 1, 2008). Under this definition, the resolution of the Complaint will have substantial effect upon the bankruptcy estate of Bay Vista, and thus "related to" jurisdiction exists.

190 (4th Cir. 1981)). Judicial estoppel is regarded "in the nature of a positive rule of procedure based upon manifest justice and to a greater or lesser degree on considerations of orderliness, regularity and expedition in litigation." *Dunkin' Donuts, Inc. v. Lavani*, Case No. 95-2072, 1996 WL 276990, at *4 (4th Cir. 1996) (unpublished table decision) (quoting *Rohanna v. Vazzana*, 196 Va. 549, 553, 84 S.E.2d 440, 442 (1954)). To the extent Count Three asserts a cognizable cause of action, it appears there is no basis to conclude such an action is "core," as the claim is founded upon the identical *ex contractu* basis as Count One and Count Two. Further, to the extent Count Three may be construed as asserting a claim sounding in misrepresentation or some other tortious basis, Count Three also would be fairly characterized as a "non-core" proceeding. *See Weiner's, Inc. v. T.G. & Y. Stores Co.*, 191 B.R. 30, 32-34 (S.D.N.Y. 1996) (tort action by Chapter 11 debtor against a non-creditor third party cannot be characterized as a "turnover" proceeding and "is more like non-core, pre-petition contract or tort claim").

2. Is There Basis for Federal Court Jurisdiction Other Than Section 1334?

The McLeskey Defendants assert there is no other basis for federal jurisdiction in this matter other than the jurisdiction founded under § 1334:

> Plaintiff is asserting an entitlement to the Foreclosure Sale proceeds under state contract and quasi-contract law. Under these facts, the fourth part of the mandatory abstention test is met, because Plaintiff's action provides no independent basis for federal court jurisdiction outside of the bankruptcy code, and could not have been brought in federal court absent jurisdiction under 28 U.S.C. § 1334(b). No other federal subject matter provisions grant this Court jurisdiction to consider Plaintiff's claims.

Abstention Motion, at 6. The Trustee contends to the contrary, believing that the diversity jurisdiction of the federal courts would independently support the assertion of federal jurisdiction

28

over the Complaint:

> Bay Vista is a Florida corporation. On information and belief, Mr. McLeskey is a Virginia resident and McLeskey and Associates, LLC is a Virginia limited liability company. This adversary proceeding, outside of the bankruptcy context, is thus between citizens of different states. In addition, the Complaint seeks recovery of $540,633.63, which is greater than $75,000.00. Consequently, notwithstanding the jurisdictional authority of 28 U.S.C. §1334(b), an independent basis for federal court subject matter jurisdiction would exist with respect to this adversary proceeding. *See* 28 U.S.C. § 1332.

Opposition Memorandum, at 9-10.

The McLeskey Defendants reply that no diversity jurisdiction exists here because of the

absence of complete diversity between the parties:

> A federal court has jurisdiction relative to a plaintiff's claims against a defendant by virtue of Section 1332 of Title 28 of the United States Code, only if there is complete diversity of citizenship between all parties (plaintiff and defendant), and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. See 11 U.S.C. §1332. The Trustee erroneously refers to Bay Vista of Virginia, Inc.'s last state of incorporation in support of his claim that diversity jurisdiction is supported.

> It is well settled that the existence of diversity is measured as of the time of the institution of the lawsuit. As such, courts are required to view a corporation's citizenship for purposes of diversity jurisdiction at the time the action is commenced. By the Trustee's admission, the Debtor had no corporate existence in Florida as of the date the above-captioned adversary proceeding was filed on April 16, 2008. Further the Debtor's bankruptcy case was initially filed in the Middle District of Florida and was transferred to this Court on a creditor's motion to transfer venue. In ruling on the venue motion, the Florida bankruptcy court specifically noted that from March 2006 through the date of its bankruptcy petition, the Debtor engaged in no business other than the maintenance of existing litigation. (Transcript of hearing on Motion to Transfer Venue, p. 41). The court further found that "all of the debtor's business activities were conducted in Virginia, all of its assets were located in Virginia." (*Id*. at 45). The court granted the motion to transfer venue and concluded that "[we] have a Debtor that in all respects is a Virginia company involved in Virginia litigation. . . ." (*Id.* at 47).

Reply, at 8-9 (internal citations omitted).

The Fourth Circuit Court of Appeals has concluded the citizenship of an inactive corporation must be determined by a fact intensive case-by-case analysis:

> Because we are required to view the corporation's citizenship for purposes of diversity jurisdiction at the time the action is commenced, we cannot categorically conclude that an inactive corporation is a citizen of its last place of business, as the Second Circuit concluded in *Wm. Passalacqua*, 933 F.2d at 141.  On the other hand, to adopt a "bright-line" rule, as announced by the Third Circuit in *Hansen*, 48 F.3d at 696, that a corporation inactive at the commencement date of the litigation has no place of business and is therefore only a citizen of its state of incorporation could overlook the realities of a corporation's business activities and their geographical nexus, yielding a result demonstrably at odds with the statute.
>
> A corporation's business does not usually end with the abruptness of closing its doors.  Even when a corporation has ceased all operations and has become inactive, the continuing impact of its business in a given locale could linger on to an extent sufficient to give it a geographical identity there as its principal place of business.  Indeed, a corporation's winding up of its business affairs may well constitute a significant activity and consume a considerable period of time.
>
> These observations prompt us to emphasize that determinations of a corporation's principal place of business must be made on a case by case basis.  And a court must analyze the facts of each case to determine as of the date the action was commenced whether a corporation's business activity was sufficient to make it a citizen of the state of such activity.

*Athena Auto., Inc. v. DiGregorio*, 166 F.3d 288, 291 (4th Cir. 1999).

There is no dispute that the Complaint does not invoke the federal question jurisdiction of the federal courts.  As to the claimed diversity jurisdiction here, there simply are insufficient facts developed at this stage of the litigation to conclusively find complete diversity exists so as to support jurisdiction pursuant to 28 U.S.C. § 1332.  Accordingly, at least for the purposes of

adjudication of the Abstention Motion, the Court must find there has not been a showing that an

alternative basis of federal jurisdiction is in evidence to defeat the Abstention Motion.

    3.  Has an Action Been Commenced in State Court, and May the State Court Action be
Timely Adjudicated?

    The issues of the pendency and status of the state court proceedings are difficult ones

given the unusual nature of how the controverted matters have proceeded in the State Court.  The

McLeskey Defendants assert that proceedings remain pending in State Court and are available

for adjudication of the claims of the Trustee in the Complaint.  The Trustee disagrees:

> With respect to the obligations owed by Bay Vista to its various creditors, there
> were no less than three proceedings commenced in varying forms in the State
> Court: (i) the complaint filed by the Wu Parties seeking an injunction of the
> Foreclosure Sale; (ii) the statutory posting/filing of the post-Foreclosure Sale
> Accounting by the Foreclosure Trustee; and (iii) the mechanic's lien litigation
> commenced by the Ballard Parties, which ultimately gave rise to the interpleader
> suit with respect to disposition of the Surplus Funds.  It is somewhat unclear
> which of these various State Court proceedings the Defendants are referring to in
> their Abstention Motion.

> What is entirely clear, however, is that none of the foregoing State Court
> proceedings considered in any substantive way the issues relevant to the
> overstated McLeskey Payoff or resolution of this adversary proceeding. . . .

> . . . .

> Nor does the mechanic's lien litigation and resulting interpleader suit
> suffice as a preexisting proceeding for purposes of mandatory abstention.  That
> proceeding was directed specifically to determining the disposition— as between
> competing lien creditors (*i.e.*, the "Ballard Parties" and the "Wu Parties")—of the
> $876,981.32 "Surplus Funds" generated from the Foreclosure Sale **after**
> deduction of the disputed McLeskey Payoff.  That is a completely different
> question from the one presented in this adversary proceeding.

Opposition Memorandum, at 10-11.

The McLeskey Defendants disagree and assert that one of the pending State Court proceedings provides an appropriate vehicle for resolution of the Trustee's claims:

> [The Interpleader] is just such an action. The fund (to which the Trustee effectively seeks to add) has been deposited into the registry of the Virginia Beach Circuit Court pursuant to Order. The final accounting, when presented, will be litigated in that action. The Trustee's action seeks to affect the result of that accounting matter. It is an apt vehicle for a determination of the Trustee's claims, whether for "overage" or for breach of contract (the two claims are really one and the same).

Reply, at 9-10. At the oral argument of the Abstention Motion, upon inquiry by the Court as to how the Trustee would raise the issue of overpayment as claimed in the Complaint in the Interpleader, counsel for the McLeskey Defendants suggested that the Trustee would intervene and be substituted as a party in place of Bay Vista and thereafter file a cross-claim against the McLeskey Defendants.

An examination of decisions that have considered the issue of the pendency of a state court proceeding provide little insight into the unusual posture of the state court proceedings which have involved Bay Vista. Most have simply noted the existence or non-existence of a parallel state action.[16]

The dilemma in the instant matter is found in the fact the issues raised by the Trustee in

---

[16] In *Barbee v. Colonial Healthcare Center, Inc.*, Case No. Civ. A. 3:03-CF-1658N, 2004 WL 609394 (N.D. Tex. 2004) (unreported), the district court affirmed the analysis of the bankruptcy court in granting permissive abstention where the parties seeking abstention had not yet become parties in the pending state court litigation: "Litigation had been pending in state court, in which the Noteholders had sought to intervene. Presumably, with the resolution of the bankruptcy issues by settlement and the agreed judgment with State Bank, the Noteholders could renew their intervention efforts." *Id.* at *2 (quoting *Reed v. State Bank & Trust* (*In re East Texas Healthcare, Inc.*), Adv. No. 02-3218, slip op. at 8 (Bankr. N.D. Tex. Mar. 10, 2003)). The circumstances here are somewhat different as the party who would be required to intervene in the Interpleader is not the party seeking abstention but rather is resisting abstention.

the Complaint are not the subject of the Interpleader.  Implicit in the requirement that there be

a pending parallel proceeding in order to abstain is the concept that the state proceeding involve

the same issues as the federal proceeding.  *See, e.g.*, *Bicoastal Corp. v. Sonora Assocs., Ltd.* (*In

re Bicoastal Corp.*), 126 B.R. 120, 121 (Bankr. M.D. Fla. 1991) ("It should be noted at the outset

that inasmuch as there is no suit pending in any non-bankruptcy forum involving this same

controversy, the mandatory abstention provision of the Judicial Code, 28 U.S.C. Section

1334(c)(2), is not applicable."); *Atlas Automation, Inc. v. Jensen, Inc.* (*In re Atlas Automation,

Inc.*), 42 B.R. 246, 248 (Bankr. E.D. Mich. 1984) ("[I]t appears that the same issues which arose

out of the identical subject matter are already in litigation in a lawsuit pending . . . [in state court]

. . . .").

What appears to confront the Court is a pending State Court action, the Interpleader, to

which the Trustee is not now (and has never been) an actual party and where the issue raised in

the Complaint by the Trustee (i.e., the alleged inflated payoff on the McLeskey Notes) has never

been introduced into any of the State Court proceedings.[17]  Even an extenuated construction of

---

[17]  The McLeskey Defendants suggest that a contest of the accounting by the Foreclosure
Trustee offers a litigation platform for resolution of the issue of whether the McLeskey Payoff
was overstated.  The Trustee argues to the contrary.  It is not entirely clear whether a challenge
to the Foreclosure Trustee's accounting is a proper forum for resolution of this issue.  Pursuant
to Va. Code Ann. § 26-15, "[w]ithin six months after the date of a sale made under any recorded
deed of trust, mortgage, or assignment for benefit of creditors, . . . a trustee shall return an
account of sale to the commissioner of accounts of the court wherein the instrument was first
recorded."  Va. Code Ann. § 26-15 (2008).  Following the return of the account of the sale, the
trustee must also deliver a copy of the deed tot he commissioner of accounts.  *Id.*  The
commissioner then must file a report of the account of the trustee's transaction to the appropriate
state court, which records the report; this report is to be filed "as soon as practicable after its
completion."  *Id.* §§ 26-15, -32.  Under Va. Code Ann. § 26-33, "[t]he court, . . . after fifteen
days from the time the report has been filed in its office, shall examine such exceptions as have
been filed."  *Id.* § 26-33.

what constitutes pending state court litigation must contemplate that the parallel proceeding at a minimum involves the same issues and parties as the federal litigation. Such is not the case here. To offer up the alternative that the Trustee may formally intervene in the Interpleader and then initiate a cross-claim against a co-defendant falls short of the mark.

The factor of expeditious resolution of the parallel proceeding also weighs against the McLeskey Defendants. There is no pending State Court proceeding involving the issue now raised by the Trustee. As such, initiation of a cross-claim (as suggested by the McLeskey Defendants) is at its essence the beginning a new proceeding in State Court.[18] Often abstention

---

The limits of the use of the accounting process to resolve an issue such as the alleged overstatement of the McLeskey Payoff is not clear under existing Virginia law. *Compare In re Four Accountings of Trustees' Sales*, 40 Va. Cir. 324, 325 (Prince William County 1996) (matters outside the accounting should be the subject of judicial determination other than through the accounting process), *with In re Trustee's Sale of the Property of Willie Brown*, 67 Va. Cir. 204, 210-11 (Norfolk City 2005) ("It would be an absurd result for a Commissioner, knowing there was a defect in the conduct of the sale, the accounting, or the fiduciary's qualifications, to approve an accounting simply because it was mathematically correct.").

In any event, apparently there is no proceeding presently pending before the State Court involving any accounting by the Foreclosure Trustee or exception thereto, and the absence of such a pending proceeding negates the need for any further analysis of the priority of resolution of the issue of the alleged overstatement of the McLeskey Payoff through the accounting procedure. *See* Reply, at 10 ("The final accounting, *when presented*, will be litigated in that action.") (emphasis added), and at 10 n.4 ("Only a first and interim accounting has been presented due to the mechanic's lien suit and now this proceeding.").

[18]   It is uncertain under Virginia law that the Trustee's claim for an overstated payoff can be asserted as a cross-claim in the Interpleader. Rule 3:10 of the Rules of the Supreme Court of Virginia governs the assertion of cross-claims in Virginia state court proceedings and provides as follows:

(a) Scope. A defendant may, at that defendant's option, plead as a cross-claim any cause of action that such defendant has or may have against one or more other defendants growing out of any matter pled in the complaint. Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.

is granted where the record reflects a substantial investment of effort in the state proceeding. *See,*

*e.g.*, *Kesar Enters., Inc. v. State Bank of Texas* (*In re Kesar Enters., Inc.*), 330 B.R. 756, 762

(Bankr. W.D. Mo. 2005) ("The state court has already invested considerable effort in litigating

[the state law issues], having held several days of evidentiary hearings and having issued an

extensive opinion including numerous findings of fact and legal conclusions."); *Frelin v.*

*Oakwood Homes Corp.*, 292 B.R. 369, 386 (Bankr. E.D. Ark. 2003) ("[I]t does not follow that

it will serve judicial economy to have the Delaware Bankruptcy Court start over and try the State

Court Action, especially where the State Court Action has been pending for over two years and

substantial litigation has taken place."). The State Court has invested no time or effort to resolve

the issue of whether the McLeskey Payoff was overstated. The absence of a pending parallel

state court precludes the necessity of mandatory abstention here.

---

(b) Time for initiation. A cross-claim shall, subject to the provisions of Rule 1:9, be
filed within 21 days after service of the summons and complaint on the defendant
asserting the cross-claim, or if service of the summons has been timely waived on
request under Code § 8.01-286.1, within 60 days after the date when the request for
waiver was sent, or within 90 days after that date if the defendant was addressed
outside the Commonwealth.
(c) Response to cross-claim. The cross-claim defendant shall file pleadings in
response to such cross-claim within 21 days after it is served.
(d) Separate trials. The court in its discretion may order a separate trial of any cause
of action.

Sup. Ct. of Va. R. 3:10. Thus, Rule 3:10 requires that a cross-claim be asserted as to "any cause
of action . . . growing out of any matter pled in the complaint." *Id.* As the validity of the
McLeskey Payoff was not the subject of the complaint filed in the Interpleader, it is uncertain
whether the Trustee would be permitted to assert his claim as a cross-claim in the Interpleader.
Additionally, the provisions of Rule 3:10(b) also would make the assertion of the Trustee's claim
as out-of-time, unless the State Court exercised its discretion under Rule 1:9 of the Rules of the
Supreme Court of Virginia to extend the time for filing of such a cross-claim.

35

C.  Permissive Abstention Pursuant to 28 U.S.C. § 1334(c)(1)

It remains to consider whether the Court should exercise its discretion to abstain from adjudication of the Complaint.  Judge Tice has expounded a number of factors for consideration in this regard:

> (1) the court's duty to resolve matters properly before it; (2) the predominance of state law issues and non-debtor parties; (3) the economical use of judicial resources; (4) the effect of remand on the administration of the bankruptcy estate; (5) the relatedness or remoteness of the action to the bankruptcy case; (6) whether the case involves questions of state law better addressed by the state court; (7) comity considerations; (8) any prejudice to the involuntarily removed parties; (9) *forum non conveniens*; (10) the possibility of inconsistent results; (11) any expertise of the court where the action originated; and (12) the existence of a right to a jury trial.

*Kepley Broscious, PLC v. Ahearn* (*In re Ahearn*), 318 B.R. 638, 644 (Bankr. E.D. Va. 2003) (quoting *Blanton v. IMN Fin. Corp.*, 260 B.R. 257, 265 (M.D.N.C. 2001)).  Unlike the analysis of the necessity for mandatory abstention, where all criteria must be satisfied to abstain from adjudication of a matter, these factors are weighed in light of the circumstances of an individual case.  *See Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734 (5th Cir. 1999) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 16 (1983)) ("The decision whether to surrender jurisdiction because of parallel state court litigation does not rest on a 'mechanical checklist' of [abstention] factors, but on a 'careful balancing' of them, 'as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.'"); *Hallmark Capital Group v. Pickett* (*In re Pickett*), 362 B.R. 794, 799 (Bankr. S.D. Tex. 2007) ("The Court must give individual consideration and weight to each of these factors. . . .").

Analyzing these factors in light of the Complaint, several of the factors indicate that a

decision to abstain is prudent.  The Complaint requires only consideration of state law issues.

The sole defendants are non-debtor parties, who apparently have no claim to assert against the

debtor Bay Vista.  Comity also is compelling to persuade this Court to defer to its brothers and

sisters in the state courts.  This Court has never been reticent to permit the Virginia state courts

to conduct adjudication of matters where appropriate, as well illustrated by the decision in this

bankruptcy case to grant relief  from the automatic stay to permit the State Court to complete its

proceeding to resolve the competing claims to the Surplus Proceeds.  The State Court's expertise

to address the question of whether the McLeskey Payoff was overstated is doubtless.

Other factors speak to the retention of the adjudication by this Court.  The relatedness of

the Complaint to this bankruptcy case is manifest: the Complaint apparently provides the

principal mechanism available to provide any significant funding to the Bay Vista bankruptcy

estate.  Transfer of the Complaint to the State Court, where the issue of overpayment of the

McLeskey Payoff is not presently pending, would likely delay the administration and closure of

Bay Vista's bankruptcy case.  As afore noted, the non-pendency of the issue raised in the

Complaint is problematic: in order to place this very issue before the State Court, the Trustee

would have to successfully intervene in the Interpleader and commence a new action there,

presumably by filing a cross-claim against the McLeskey Defendants.[19]  It is unclear as well what

effect it may have on the timely prosecution of such a cross-claim that the State Court has

adjudicated the only controversy as yet raised in the Interpleader, that being the entitlement to

the Surplus Proceeds. The additional fact that this controversy is now on appeal to the Supreme

---

[19] *See* footnote 18, *supra*, regarding the uncertainty as to whether the Trustee could
assert a cross-claim in the Interpleader action.

Court of Virginia also clouds the certainty of prompt resolution of the issue raised by the

Complaint in the State Court.[20]

The remaining factors also counsel against permissive abstention. This Court is not an

inconvenient forum to any of the parties, including the McLeskey Defendants, as this Court is

very physically proximate to the location of the State Court, nor is there any prejudice to the

McLeskey Defendants, as there have been no expenditure of any resources in the State Court to

resolve the instant dispute. There is no possibility of inconsistent results given the non-pendency

of the issue of overpayment in the State Court. Further, with all deference to the expertise and

ability of the State Court to resolve the issue of the Complaint regarding the alleged overpayment,

the state law issues here are similar to issues frequently and routinely resolved by this Court, that

of determining how much is owed on an instrument applying Virginia law. While again this

Court has not been reluctant to defer to state courts, it is also very cognizant of its certain

responsibility to promptly resolve matters properly before it and does not shrink from

performance of this duty.[21] Finally, the issue of a right to trial by jury does not weigh heavily.

There is no present demand for jury trial, and a subsequent request can be accommodated by the

transfer of the Complaint for trial before the United States District Court for the Eastern District

---

[20] For example, given that the present entirety of the Interpleader has been resolved by
the State Court and is now on appeal, it is not certain to this Court that the State Court would
necessarily entertain the intervention and substitution of the Trustee as a party to the Interpleader
or the initiation of a largely unrelated action to that of the Interpleader while the appeal is
pending.

[21] The factor of the economical use of judicial resources appears neutral here, as the fact
that the issue in the Complaint is not the subject of any present State Court proceeding indicates
no judicial resources have yet been expended to resolve the issue here, except by this Court in
the adjudication of the Abstention Motion.

38

of Virginia.[22]

Weighing all of the factors and circumstances here, the Court believes the ends of justice are better served by the retention and resolution of the Complaint in this forum.

D. Conclusion

For the reasons set forth herein, the Court finds that mandatory abstention is not required here, and the circumstances of the Complaint do not compel the permissive abstention of this Court. Accordingly, the Court finds that the Abstention Motion should be denied.

A separate Order denying the Abstention Motion will be issued.

The Clerk is directed to forward a copy of this Memorandum Opinion to Peter G. Zemanian, counsel for the Chapter 7 Trustee; to the Chapter 7 Trustee, Tom C. Smith, Jr.; and to Jonathan L. Hauser, counsel for F. Wayne McLeskey and McLeskey and Associates, LLC.

**Entered this 24th day of September, 2008, at Norfolk in the Eastern District of Virginia.**

STEPHEN C. ST. JOHN
United States Bankruptcy Judge

---

[22] As the dialogue between the Trustee and the McLeskey Defendants in the briefing aptly illustrates, it is not certain the Complaint necessarily gives rise to a right to trial by jury of the issue of the alleged overpayment of the McLeskey Payoff. *See* Opposition Memorandum, at 19-20, and Reply, at 16.