# UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BAY VISTA OF VIRGINIA, INC., | ) | |
| | ) | Case No. 07-71213-SCS |
| *Debtor.* | ) | |
| | ) | |
| TOM C. SMITH, JR., | ) | |
| CHAPTER 7 TRUSTEE, | ) | |
| | ) | APN 08-7046-SCS |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| F. WAYNE McLESKEY, JR., | ) | |
| McLESKEY and ASSOCIATES, LLC, | ) | |
| | ) | Chapter 7 |
| *Defendants.* | ) | |

## BANKRUPTCY JUDGE'S REPORT AND RECOMMENDATION

This matter came on for hearing upon the Motion to Dismiss ("Motion") filed by the Defendants, F. Wayne McLeskey, Jr. and McLeskey and Associates, LLC (collectively referred to as "McLeskey"), seeking to dismiss Counts One, Two, and Three of the Complaint which commenced the above-captioned adversary proceeding. The Complaint was filed by Tom C. Smith, Jr., the Chapter 7 Trustee ("Trustee") for the Debtor, Bay Vista of Virginia, Inc. ("Bay Vista"), and is composed of three separate counts.

In connection with the determination of an earlier Motion for Abstention filed by McLeskey, this Court entered an order holding that Counts One, Two, and Three of the Trustee's Complaint were not "core proceedings" within the definition of 28 U.S.C. § 157(b)(2), but were "otherwise related to" the case for purpose of 28 U.S.C. § 157(c)(1). A Memorandum Opinion

memorializing the reasoning of the Court's denial of the Motion for Abstention was simultaneously issued.  *See Tom C. Smith, Jr., Chapter 7 Trustee v. F. Wayne McLeskey and McLeskey and Associates, LLC* (*In re Bay Vista of Virginia, Inc.*), 394 B.R. 820 (Bankr. E.D. Va. 2008) (hereinafter *In re Bay Vista*).  Consequently, while this Court may hear proceedings related to those counts, the Court may only make proposed findings of fact and conclusions of law as to those proceedings.  28 U.S.C. § 157(c)(1) (2008).  The United States District Court shall enter any final order or judgment after considering this Court's proposed findings and conclusions and after reviewing those matters to which any party has timely and specifically objected.  *Id.*  McLeskey seeks dismissal of the three counts of the Complaint on the basis that the counts fail to state a claim upon which relief may be granted, making this motion pursuant to Federal Rule of Civil Procedure 12(b)(6), which is made applicable to this case by Federal Rule of Bankruptcy Procedure 7012(b).  After examining the parties' pleadings and after hearing oral argument on the Motion to Dismiss on December 17, 2008, the Court recommends the following proposed conclusions of law with respect to the Motion to Dismiss.

## The Allegations of the Complaint

The allegations made by the Trustee in the Complaint were examined extensively in *In re Bay Vista*.  *See In re Bay Vista*, 394 B.R. at 824-27.  The Complaint stems from a foreclosure sale conducted by McLeskey of certain real property located in Virginia Beach, Virginia ("Bay Vista Property") consisting of a residential condominium project.  In conducting the foreclosure, McLeskey foreclosed upon certain deeds of trust securing the repayment of three notes made by Stanley Tseng and the Tseng Trust and a fourth note made by Bay Vista (collectively, the "McLeskey Notes").  The contentions of the Complaint were summarized as follows:

2

The Trustee filed his Complaint against the McLeskey Defendants on April 16, 2008. The Complaint seeks the recovery of money allegedly belonging to the Debtor's estate and, according to the Trustee, therefore qualifies as an "adversary proceeding" pursuant to Rule 7001(1) of the Federal Rules of Bankruptcy Procedure.

The factual allegations of the Complaint of the Trustee are as follows. Prior to the commencement of this Chapter 7 case, Bay Vista was the owner of a 1.075-acre parcel of real property located in Virginia Beach, Virginia, and commonly known as 3800 Dupont Circle (the "Property"), which was dedicated as a residential condominium development project. The Trustee alleges Bay Vista acquired title to the Property in or about February 2005 by deed from Mr. Stanley F. Tseng, in his capacity as trustee of the Tseng Trust Agreement No. 2. As of the Petition Date, the interest of Bay Vista in the Property was subject to three Deed of Trust liens in favor of Mr. McLeskey and a fourth Deed of Trust lien in favor of McLeskey and Associates, LLC (collectively, the "McLeskey Liens"). Each of the McLeskey Liens secured the repayment of certain corresponding loan indebtedness, which was evidenced by four note instruments (collectively, the "McLeskey Notes").

Due to the apparent default of Bay Vista of its repayment obligations under the McLeskey Notes, the McLeskey Defendants directed that a foreclosure sale (the "Foreclosure Sale") of the Property be noticed, advertised, and conducted by Samuel I. White, P.C. (the "Foreclosure Trustee"), on October 6, 2005. The state court saga of Bay Vista apparently commenced when Mr. Hung-Lin Wu and the Wu Trust (collectively, the "Wu Parties") filed a bill of complaint to enjoin the Foreclosure Sale in the Circuit Court for the City of Virginia Beach, Virginia ("State Court"). The State Court declined to enjoin the Foreclosure Sale and ordered that the proceeds of the Foreclosure Sale remaining after payment to the McLeskey Defendants be placed in escrow pending the State Court's resolution of the extent, validity, and priority of any other liens on the Property. The Foreclosure Sale was conducted on October 6, 2005.

Following active bidding at the Foreclosure Sale, Mr. McLeskey was the last and highest bidder for the Property, having submitted a winning bid in the amount of $5 million. Mr. McLeskey assigned his winning bid, and the associated right to purchase the Property, to Bay Vista Properties, LLC ("BVP"). On or about November 14, 2005, BVP paid to the Foreclosure Trustee the balance of the $5 million bid amount, and on November 17, 2005, BVP recorded its deed to the Property. Under Virginia law, the Foreclosure Trustee was required to disburse the $5 million Foreclosure Sale proceeds in the following order:

> first, to discharge the expenses of executing the trust, including a reasonable commission to the trustee; secondly, to discharge all taxes, levies, and assessments, with costs and interest if they have priority over the lien of the deed of trust, including the due pro rata

3

thereof for the current year; thirdly, to discharge in the order of their priority, if any, the remaining debts and obligations secured by the deed, and any liens of record inferior to the deed of trust under which sale is made, with lawful interest; and, fourthly, the residue of the proceeds shall be paid to the grantor or his assigns. . . .

*See* Va. Code Ann. § 55-59.4(A)(3) (2008).

The Trustee additionally alleges that, on or about February 27, 2006, the Foreclosure Trustee filed with the appropriate Virginia Beach Commissioner of Accounts a First Account of Foreclosure Sale Under Deed of Trust (the "Accounting"), disclosing the disbursements made by the Foreclosure Trustee of the Foreclosure Sale proceeds. According to the Accounting, the expenses of the Foreclosure Sale totaled $37,522.30; the delinquent and prorated real estate taxes attributable to the Property as of the date of the Foreclosure Sale totaled $31,334.88; and the combined payoff on the McLeskey Notes (the "McLeskey Payoff") totaled $4,054,927.50. A balance of $876,215.32 (the "Surplus Funds") was apparently available for distribution to the Debtor pursuant to its status as "grantor" with respect to each of the McLeskey Liens.

The Trustee additionally alleges that, notwithstanding the requirements of the Code of Virginia, the Foreclosure Trustee did not disburse the Surplus Funds to Bay Vista, but instead interpleaded those funds into the State Court at the direction of the Virginia Beach Commissioner of Accounts ("Interpleader"). . . .

. . . .

The Trustee asserts the McLeskey Defendants had not issued to Bay Vista any demand for payment, had not treated the underlying obligations as due, and had not issued any formal declaration of default under any of the McLeskey Notes as of October 1, 2003, nor had they ever exercised their discretionary option to invoke the default rate of interest under the McLeskey Notes. Accordingly, the Trustee asserts that $3,514,293.87 correctly reflects the total aggregate balances outstanding under the McLeskey Notes. . . .

*In re Bay Vista*, 394 B.R. at 824-27 (footnote omitted).[1]

The three counts of the Complaint of the Trustee were summarized as follows:

---

[1] In the Complaint the Trustee references the date of October 1, 2003, with regard to the time frame in which the foreclosure occurred; however, other documents filed as exhibits in this Adversary Proceeding and in the underlying bankruptcy case make clear that the foreclosure occurred in 2005.

Count One of the Complaint is entitled "Turnover of Property." This count alleges that the Trustee, in his capacity as Chapter 7 Trustee for Bay Vista's estate, has the power to receive and collect on behalf of Bay Vista's estate property belonging to Bay Vista or its value pursuant to 11 U.S.C. § 542, and that under the terms of the McLeskey Notes and of the deed of trust instruments evidencing the McLeskey Liens, Bay Vista is "entitled to recover from the Foreclosure Trustee all sums overpaid on the McLeskey Payoff [in the amount of] $540,633.63." Complaint ¶ 43.

Count Two of the Complaint is entitled "Breach of Contract." The Trustee asserts the McLeskey Defendants breached their contractual duty to Bay Vista under the McLeskey Notes (i) by presenting to the Foreclosure Trustee an incorrect and overstated payoff based upon a retroactive computation of the default rate of interest and late charges; and (ii) by accepting disbursement from the Foreclosure Trustee of such higher portion of the Foreclosure Sale proceeds. The Trustee asserts that, in his capacity as Chapter 7 Trustee, he holds certain "strong-arm" powers specified in 11 U.S.C. § 544(a), and that included among the strong-arm powers is the power and authority to enforce Bay Vista's breach of contract rights and remedies under the McLeskey Notes and to recover on behalf of Bay Vista's estate the overstated portion of the McLeskey Payoff, which is the amount of $540,633.63.

Count Three of the Complaint is entitled "Judicial Estoppel." Under this count, the Trustee asserts the McLeskey Defendants represented to the State Court that the McLeskey Payoff was in the amount of $3,514,293.87, which amount was accepted by the State Court. The Trustee further alleges the "recalculation" of interest and late charges at a retroactively applied default rate was an intentional action taken by the McLeskey Defendants for the purpose of inflating their recovery from the Foreclosure Sale proceeds. Based upon this, under the "doctrine of judicial estoppel," the McLeskey Defendants are bound by the lesser $3,514,293.87 amount of the McLeskey Payoff, and as Chapter 7 Trustee, the Trustee's strong-arm powers include the power and authority to enforce the doctrine of judicial estoppel to obtain disgorgement from the McLeskey Defendants of the $540,633.63 difference between the stated amount of the McLeskey Payoff and the inappropriately higher amount actually paid to the McLeskey Defendants by the Foreclosure Trustee.

*In re Bay Vista*, 394 B.R. at 827.

## The Motion to Dismiss

McLeskey has moved to dismiss all three counts of the Complaint. As to Count One, McLeskey's argument is concise:

The Trustee has failed to plead the absolute and undisputed right to recover

5

the Foreclosure Sale Proceeds and, as such, his turnover claims under 11 U.S.C. §542 are precluded as a matter of law. Applying the relevant law to the facts of this matter, the court is compelled to conclude that at best, a bona fide dispute of an unmatured debt exists, thus, precluding the use of turnover. The Trustee has not made, and cannot make, the required allegation that the Foreclosure Sale Proceeds are the undisputed liquidated property of the Debtor's estate. The Complaint simply fails to allege that the claim for the Foreclosure Sale Proceeds is absolute, undisputed and liquidated.

As such, the necessary element of turnover - that the property sought is clearly property of the debtor and free from any ownership dispute, is clearly missing here. It is evident from his pleadings and attachments that the Trustee's claims for turnover fall outside of what is permitted under 11 U.S.C. § 542. . . .

Motion to Dismiss Complaint and Memorandum in Support Thereof (hereinafter "Motion to

Dismiss") at 4-5. McLeskey's argument to dismiss Count Two is more complex:

Count II is pled as a contract action. This Court must rule on the Complaint as pled. Although the Trustee alleges that the McLeskey Defendants breached contractual duties to the Debtor when they presented the Goodman Letter[2] to the Foreclosure Trustee, the exhibits attached by the Trustee to the Complaint belie that claim and demonstrate that the claim is legally meritless, because the Debtor (and of course the Trustee), was not party to the contract upon which this action is brought. The Goodman Letter (attached as Exhibit 6 to the Complaint) indicates that the resultant calculation therein was prepared using "the related demand notes between Stanley F. Tseng and Ridge Construction Corp. and/or F. Wayne McLeskey, Jr." (the "Tseng Notes"). The Tseng Notes are attached to the Complaint as Exhibits 1-3 . . . . The Debtor is not a party to the Tseng Notes. There is no allegation or indication within the four corners of the Tseng Notes that the Debtor was intended to be a third-party beneficiary thereof. As written, the Complaint simply fails to allege how the McLeskey Defendants' contracts with a non-debtor party permit this Court to grant the remedy that the Plaintiff now seeks.

Thus, the Trustee has no standing to assert a breach of contract claim concerning presentation of the Goodman Letter as the estate was neither a party to

_____

[2]  The "Goodman Letter," which is attached as Exhibit 6 to the Trustee's Complaint, is a letter dated October 20, 2005, addressed to F. Wayne McLeskey and purports to contain "[r]ecalculate[d] interest and late fees based on the terms of the Demand Notes and agree to management's calculation of interest and late fees in the attached schedules." The term "Demand Notes" is defined in the first paragraph of the letter as demand notes between Stanley F. Tseng and Ridge Construction Corp. and/or F. Wayne McLeskey, Jr.

the Tseng Notes, in privity with a party to the Tseng Notes, nor an intended third party beneficiary of those notes.  Under Virginia law, unless a party has contractual privity or is a specifically intended third-party beneficiary of a contract, it lacks standing to enforce the agreement.[3]

Motion to Dismiss at 5-6 (citation omitted).  Accordingly, McLeskey asserts that Count Two of the Complaint is facially defective because neither the Debtor, Bay Vista, nor the Trustee may assert a contractual claim for overpayment of notes which were not made by Bay Vista.  Lastly, as to Count Three of the Complaint, McLeskey returns to a succinct contention:  "There is no such thing as an independent cause of action for 'judicial estoppel.'"  Motion to Dismiss at 7.

The Trustee asserts the legal sufficiency of all of his counts.  With respect to Count One, which asserts an action for turnover, the Trustee believes this Court's conclusion in *In re Bay Vista* that Count One did not assert a core jurisdiction claim for turnover is not necessarily determinative of the merits of McLeskey's Motion to Dismiss.  The Trustee argues:

> With regard to Count One of the Complaint (labeled "turnover"), the Dismissal Motion . . . essentially restates the very same arguments raised by the Defendants in their Abstention Motion.  In the context of the Dismissal Motion, however, this argument confuses the stricter standards employed for determining whether an action qualifies as a "core proceeding" under 28 U.S.C. § 157, which was previously at issue in the Abstention Motion, and the very liberal pleading requirements of Rule 8, which are presently at issue.  Mr. Smith does not wish to revisit these core proceeding arguments, and for immediate purposes fully accepts this Court's ruling that Count One gives rise to a non-core proceeding.  Abstention Opinion at pp. 21-26.  But this is not the same thing as conceding that Count One fails entirely to state

---

[3]  At the oral argument on the Motion to Dismiss, counsel for McLeskey clarified the statement in the Motion to Dismiss that the notes were not made by Bay Vista by stating that one of the four notes foreclosed upon on the Bay Vista Property was in fact made by the Debtor, Bay Vista of Virginia, Inc.  Counsel for McLeskey represented that a default rate of interest was not claimed by McLeskey for the note made by Bay Vista.  Accordingly, the alleged absence of contractual privity would not constitute a defect as to the assertion of a cause of action for this particular instrument.

7

a cognizable claim under the liberal pleadings requirement of Rule 8.[4]

Memorandum in Opposition to Motion to Dismiss (hereinafter "Opposition Memorandum") at 5.

As to Count Two and McLeskey's assertion of a fatal absence of contractual privity for at least three of the four notes at issue, the Trustee makes three assertions supporting the adequacy of his pleadings. First, the Trustee contends that the provisions of Section 55-22 of the Code of Virginia negate any absence of contractual privity as to three of the notes on the part of the Trustee.[5] Secondly, the Trustee believes he is an intended beneficiary of the notes as a subsequent land owner; and thirdly, the Trustee asserts Virginia Code § 55-59.4(A)(3), which provides the order for distribution and payment of the proceeds of a foreclosure and specifically requires the payment of all remaining sums to the grantor of the foreclosed deed of trust.[6]

---

[4] Federal Rule of Civil Procedure 8 provides, in pertinent part:

(a)     Claim for Relief.  A pleading that states a claim for relief must contain:

(1)     a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

(2)     a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3)     a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a).

[5] For the text of § 55-22 of the Code of Virginia, see page 18 *infra*.

[6] Section 55-59.4 of the Code of Virginia provides, in pertinent part:

The trustee shall receive and receipt for the proceeds of sale, no purchaser being required to see to the application of the proceeds, account for the same to the commissioner of accounts pursuant to § 26-15 and apply the same, first, to discharge the expenses of executing the trust, including a reasonable commission

Finally, the Trustee admits that Count Three is mislabeled as a count sounding under judicial estoppel:

> Mr. Smith nevertheless concedes that the "judicial estoppel" label is not a perfectly accurate description for purposes of the "plain and simple statement" set forth in Count Three of the Complaint. . . . [W]hat is essentially described in Count Three, but not so labeled, is more in the nature of a "quasi-estoppel" giving rise to a claim for unjust enrichment.

Opposition Memorandum at 10.  The Trustee prays that he be provided an opportunity to so amend Count Three if the Court deems the mislabeling deficient for the purposes of the Motion to Dismiss.

In summary, the Trustee asserts he has adequately complied with the requirements of Federal Rule of Civil Procedure 8 in that his Complaint plainly notifies McLeskey of the facts upon which the Trustee asserts McLeskey provided an incorrect payoff of the various notes which precluded the Debtor, Bay Vista, from receiving excess proceeds from the foreclosure sale of its property and instead lead Bay Vista to receive significantly less than it was entitled by law and by contract. McLeskey counters by noting that Federal Rule of Civil Procedure 12 (as incorporated by Rule 7012 of the Federal Rules of Bankruptcy Procedure) is not negated by Rule 8 and that he is entitled to know not only the facts asserted upon which the Trustee relies, but the legal grounds supporting such

---

to the trustee; secondly, to discharge all taxes, levies, and assessments, with costs and interest if they have priority over the lien of the deed of trust, including the due pro rata thereof for the current year; thirdly, to discharge in the order of their priority, if any, the remaining debts and obligations secured by the deed, and any liens of record inferior to the deed of trust under which sale is made, with lawful interest; and, fourthly, the residue of the proceeds shall be paid to the grantor or his assigns; provided, however, that the trustee as to such residue shall not be bound by any inheritance, devise, conveyance, assignment or lien of or upon the grantor's equity, without actual notice thereof prior to distribution; provided further that such order of priorities shall not be changed or varied by the deed of trust. . . .

Va. Code Ann. § 55-59.4(A)(3) (2008).

a recovery.[7]

## Conclusions of Law

### I.  Standard of Review for a Motion to Dismiss

Judge Dohnal has recently described the standard of review applied to a motion to dismiss

pursuant to Federal Rule of Civil Procedure 12(b)(6):

> "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.
>
> The Federal Rules of Civil Procedure "require[ ] only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Courts have long cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief."  *Conley*, 355 U.S. at 45-46.  In *Bell Atlantic Corp.*, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  127 S.Ct. at 1964-65 (citations omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," and one that is "plausible on its face," rather than merely "conceivable."  *Id.* at 1965, 1974 (citations omitted).  Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. Duport de Nemours & Co.*,

---

[7]  This Court is aware, subsequent to the foreclosure sale, the Wu parties initiated a complaint in the United States District Court for the Eastern District of Virginia in which the transfer of the Bay Vista Property from Stanley F. Tseng, in his capacity as trustee for Tseng Trust Agreement No. 2, to Bay Vista was set aside. The action was initiated subsequent to the foreclosure sale.  It is unclear what effect, if any, this judgment ("District Court Judgment") has upon the claims of the Trustee.  In any event, the District Court Judgment has not been raised in this proceeding.

324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002).

*Carter v. Countrywide Home Loans, Inc.*, Civil No. 3:07CV651, 2008 WL 4167931, at *3 (E.D. Va. Sept. 3, 2008) (slip copy).  The Fourth Circuit Court of Appeals has examined the requirements of Rule 8:

> The district court apparently concluded that the Secretary's amended complaint did not satisfy Rule 8(a).  The rule requires a complaint to include "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . , (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." Fed. R. Civ. P. (8)(a).
>
> The Supreme Court has recently reaffirmed that Rule 8(a)'s "simplified notice pleading standard" merely requires a statement that "'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).
>
> . . . .
>
> As a leading treatise recognizes, then, Rule 8(a) only:
>
>> requires the pleader to disclose adequate information regarding the basis of his claim for relief as distinguished from a bare averment that he wants relief and is entitled to it.  Undoubtedly great generality in the statement of these circumstances can be permitted so long as the defendant is given fair notice of what is being asserted against him.
>
> 5 Wright & Miller, *supra,* § 1202, at 94-95.   Under this relaxed standard, unmeritorious claims and attempts at surprise are eliminated not by motions to dismiss, but rather primarily through "liberal discovery rules and summary judgment motions."  *Swierkiewicz*, 534 U.S. at 512-13, 122 S.Ct. 992.
>
> We are mindful that "[w]hat constitutes a short and plain statement must be determined in each case on the basis of the nature of the action, the relief sought, and the respective positions of the parties in terms of the availability of information and a number of other pragmatic matters."  5 Wright & Miller, *supra*, § 1217, at 240-41. In our post-*Swierkiewicz* case law, we have hewed closely to the Supreme Court's instruction that "all the Rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds

upon which it rests." *Conley*, 355 U.S. at 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (internal quotation marks and citation omitted).

*Chao v. Rivendell Woods, Inc*., 415 F.3d 342, 346-47 (4th Cir. 2005). It remains to examine and test the sufficiency of the allegations of the Trustee's Complaint.

## II. Count One:  Turnover

Count One of the Complaint states that the Trustee has the power to receive and collect on behalf of Bay Vista's estate property belonging to Bay Vista or its value pursuant to 11 U.S.C. § 542. It further states that under the terms of the McLeskey Notes and of the deed of trust instruments evidencing the McLeskey Liens, Bay Vista is entitled to recover the sum of $540,633.63 that was overpaid on the McLeskey Payoff.  Section 542 of the Bankruptcy Code provides, in relevant part:

> an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a) (2008).

In *In re Bay Vista*, this Court extensively examined the issue of whether Count One stated a true turnover action which constituted a core proceeding under 28 U.S.C. § 157 and concluded Count One did not state a turnover claim pursuant to 11 U.S.C. § 542:

> [I]t appears Count One of the Complaint asserts a "non-core" action.  At first blush, it is compelling to characterize the claim of Count One as sounding in the nature of determination of the "extent" of a lien on property of the debtor, as the Trustee advocates.  However, as a temporal matter, there is no existing lien nor does the Property presently constitute "property of the estate," as the Property was foreclosed upon and title transferred from Bay Vista prior to the bankruptcy filing. . . .[H]ere there is no specific res of money that is the property of the debtor as surplus proceeds from a foreclosure sale that are available for distribution to the debtor's estate subject to the adjudication of competing creditor claims to this res.  Further, it appears the claim in Count One of the Trustee is not a "mature" claim, as necessary to support a true action for turnover.  Rather, the claim in Count One of the Trustee sounds more

12

nearly as an action whose purpose is creation of a claim. Finally, the action asserted in Count One by the Trustee, given its admitted contractual basis, seems to ignite the precise concerns expressed by the Fourth Circuit Court of Appeals in Apex Express, discussed *supra*, that including a potential money judgment as a core proceeding such as asserted here would "swallow the rule established by *Northern Pipeline*." *Humboldt Express, Inc. v. Wise Co.* (*In re Apex Express Corp.*), 190 F.3d 624, 632 (4th Cir. 1999). Accordingly, assessing both form and substance of Count One, it appears the action asserted by the Trustee is not in the nature of a true "turnover" proceeding and is properly characterized as a "non-core" proceeding.

*In re Bay Vista*, 394 B.R. at 838-39. In so concluding, this Court was influenced by the analysis of

Judge Merhige:

Section 542(b) creates an action for turnover of matured debts owed to a bankrupt estate. These may be, for example, debts owed for accounts receivable, for judgments already obtained or for monies previously held in trust or in escrow. In contrast, actions for damages based on state law claims are not within the scope of the statute. As NEI emphasizes, a debt may be both mature for purposes of this provision and nonetheless disputed by the defendant. In other words, for an action to be a turnover proceeding, it is not relevant that the defendant disputes the existence of the debt by, perhaps, denying the complaint's allegations, as long as those allegations state the existence of a mature debt.

*Nat'l Enters. v. Koger P'ship* (*In re Nat'l Enters., Inc.*), 128 B.R. 956, 959 (E.D. Va. 1991) (internal

citations omitted). *See also Leonard v. Optimal Payments Ltd.* (*In re Nat'l Audit Def. Network*), 332

B.R. 896, 911 (Bankr. D. Nev. 2005); *Porter-Hayden Co. v. First State Mgmt. Group, Inc.* (*In re

Porter-Hayden Co.*), 304 B.R. 725, 732 (Bankr. D. Md. 2004).

The Trustee argues that, because of the provisions of Rule 8, the application of Rule 12(b)(6)

demands greater liberality than the required analysis of "core" versus "non-core" and this Court's

earlier conclusion does not control the determination of the merits of McLeskey's Motion to Dismiss

regarding Count One. The Trustee further suggests Judge Merhige's analysis supports his position

that Count One properly describes a cognizable action against McLeskey:

. . . Count One unquestionably provides a "short and plain statement" to the effect that an antecedent debt in the amount of $540,633.63 is owed to the Bay Vista estate.

13

That the Defendants dispute this short and plain statement does not render the Count One legally defective. If such were the case, there would literally never be a cognizable contested turnover proceeding, since (under the Defendants' logic) the mere suggestion of a dispute renders turnover inappropriate. Instead, the more sensible course (as suggested by Judge Merhige) is for this Court to assess whether the dispute goes to the very existence of the claimed debt or is simply a defense to the enforcement of such debt.

Opposition Memorandum at 6.

The Trustee misconstrues the teachings of Judge Merhige. The critical issue here for analysis is not whether the "debt" is disputed, but rather whether a claim that is for an unmatured debt can ever sound as a claim for turnover under 11 U.S.C. § 542. The case law strongly suggests that a claim that fails to satisfy the requirements of § 542 cannot be a "turnover" action.

Illustrative is *Hechinger Investment Co. of Delaware, Inc. v. Allfirst Bank* (*In re Hechinger Investment Co. of Delaware, Inc.*), 282 B.R. 149 (Bankr. D. Del. 2002). There a Chapter 11 debtor brought an adversary proceeding against a bank alleging an improper draw on a line of credit and asserting the drawn funds in the possession of the defendant bank were estate property to which the debtor was entitled to turnover pursuant to 11 U.S.C. § 542. The bank moved to dismiss the turnover count. The court agreed:

Defendant disputes that the Drawn Funds constitute property of the Estate and argues that Count II should be dismissed as a matter of law because funds drawn on a letter of credit belong to the issuing bank and not to the customer causing the letter of credit to be issued. (Def.'s Mem. (Doc. # 7) at 10-11.) While Debtor does not dispute this general proposition to the extent such funds remain in the possession of the issuing bank, Debtor argues that the Drawn Funds constitute property of the Estate in the possession of Defendant for two reasons: (1) Debtor has an equitable interest in its claim to the return of the Drawn Funds as funds improperly debited from the Depository Account (Debtor's Mem. (Doc. # 8) ¶¶ 6-7); and (2) Debtor has an equitable interest in BankBoston's claim for breach of contract against Defendant arising out of Defendant's allegedly inaccurate Certification under the Acceptable Substitute LC ( *id.* at ¶¶ 6, 8).

Based on the facts alleged in the Complaint and all inferences that can

14

reasonably be drawn therefrom, considered in a light most favorable to Debtor, I find that Count II fails to state a claim upon which relief may be granted. In my opinion, Debtor can prove no set of facts in support of its claim that the Drawn Funds constitute property of the Estate such that Debtor would be entitled to turnover of the Drawn Funds pursuant to § 542. *See Conley*, 355 U.S. at 45-46, 78 S.Ct. 99.

As Defendant argues in its memorandum in support of its motion to dismiss, it is well settled that the proceeds from a letter of credit do not constitute property of the estate under § 541. *See, e.g.*, *Kellogg v. Blue Quail Energy, Inc.* (*In re Compton Corp.*), 831 F.2d 586, 589 (5th Cir. 1987). Therefore, such proceeds, and in this case, the Drawn Funds, are not subject to turnover under § 542 as property that the Debtor "may use . . . under section 363." 11 U.S.C. §§ 363, 542 (2002). The fact that Debtor may have equitable interests in certain breach of contract claims which seek to recover the Drawn Funds, which interests constitute property of the estate, does not alter the result.

"Turnover under 11 U.S.C. § 542 is a remedy available to debtors to obtain what is acknowledged to be property of the bankruptcy estate." *In re Asousa P'ship.*, 264 B.R. 376, 384 (Bankr. E.D. Pa. 2001); *see also In re Rosenzweig*, 245 B.R. 836, 839-40 (Bankr. N.D. Ill. 2000). It is not a remedy available to recover claimed debts which remain unliquidated and/or in dispute. *See, e.g.*, *U.S. v. Inslaw, Inc.*, 932 F.2d 1467, 1472 (D.C. Cir. 1991); *In re Charter Co.*, 913 F.2d 1575, 1579 (11th Cir. 1990); *Weiner's, Inc. v. T.G. & Y. Stores Co.*, 191 B.R. 30, 32 (S.D.N.Y. 1996); *In re Asousa P'ship.*, 264 B.R. at 384 ("[Turnover under § 542] cannot be used to determine the rights of parties in legitimate contract disputes."); *In re N. Parent, Inc.*, 221 B.R. 609, 626 (Bankr. D. Mass. 1998). In the instant matter, it is clear from the facts alleged in the Complaint that Debtor's claim to the Drawn Funds remains both disputed and unliquidated. *See* discussion *supra*, Part I. Debtor is not seeking to recover property of the Estate, but rather, is seeking to recover property allegedly owed to the Estate as a result of Defendant's alleged breach of the Consent Order and Acceptable Substitute LC. The fact that Count I seeks to recover the Drawn Funds pursuant to a claim for breach of contract and improper Draw on the Acceptable Substitute LC supports this conclusion. So too does the fact that Debtor now argues that what constitute property of the Estate are its *equitable interests* in its claim to the return of the Drawn Funds. In effect, Count II is nothing more than an impermissible attempt to circumvent Count I and recover that to which Debtor has not yet established an undisputed, liquidated claim.

*In re Hechinger Inv. Co. of Delaware*, 282 B.R. at 160-62. *Accord*, *Hirsch v. London S.S. Owners' Mut. Life Ins. Ass'n Ltd.* (*In re Seatrain Lines, Inc.*), 198 B.R. 45, 50 n.7 (S.D.N.Y. 1996) ("'It is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes or

15

otherwise demand assets whose title is in dispute.'") (quoting *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1472 (D.C. Cir. 1991), *cert. denied*, 502 U.S. 1048 (1992)); *Weiner's, Inc. v. T.G. & Y. Stores Co.*, 191 B.R. 30, 32 (S.D.N.Y. 1996) ("[An] action to determine the amount of a claimed debt to the estate that is, as yet, wholly disputed and unliquidated cannot properly be styled an action to 'turn over' estate 'property.'"); *Hassett v. BancOhio Nat'l Bank* (*In re CIS Corp.*), 172 B.R. 748, 760 (S.D.N.Y. 1994) (the language of § 542(b) creates "a strong textual inference that an action should be regarded as a turnover only when there is no legitimate dispute over what is owed to the debtor"); *J.T. Moran Fin. Corp. v. Am. Consol. Fin. Corp.* (*In re J.T. Moran Fin. Corp.*), 124 B.R. 931, 938 (S.D.N.Y. 1991) (report and recommendation of Schwartzberg, B.J.) ("Where, as here, the court must resolve whether or not the debt claimed is due, the action to collect the disputed funds cannot be regarded as a turnover proceeding under the core jurisdiction of the bankruptcy court."); *Miller v. Greenwich Capital Fin. Prods., Inc.* (*In re Am. Bus. Fin. Servs., Inc.*), 361 B.R. 747, 761 (Bankr. D. Del. 2007); *D. E. Frey Group, Inc. v. FAS Holdings, Inc.* (*In re D. E. Frey Group, Inc.*), No. 04-11906, 2006 WL 2612206, at *5 (Bankr. D. Colo. Feb. 1, 2006) ("[The] claim seeks, pursuant to 11 U.S.C. § 542(a), to have FAS turnover to the Debtor the disputed amounts Frey claims are due under its Contract with FAS.  Section 542 turnover proceedings are not an appropriate procedure to liquidate contract disputes.  Frey fails to state a claim for which a turnover order could properly enter."); *Savage & Assocs., P.C. v. Mandl* (*In re Teligent, Inc.*), 325 B.R. 134, 137-38 (Bankr. S.D.N.Y. 2005); *FLR Co. v. United States* (*In re FLR Co.*), 58 B.R. 632, 634 (Bankr. W.D. Pa. 1985) ("Implicit in the bankruptcy concept of turnover is the idea that the property being sought is clearly the property of the Debtor but not in the Debtor's possession.  Turnover, 11 U.S.C. § 542, is not the provision of the Code to determine the rights of the parties in legitimate contract disputes."). *But see*

16

*Pardo v. Pacificare of Texas, Inc.* (*In re APF Co.*), 264 B.R. 344, 356 (Bankr. D. Del. 2001) ("Given the complexity of the contractual relationships at issue and the absence of any evidence either by way of affidavit or copies of the relevant contracts, I cannot determine at this time whether the claims fall within the scope of § 542.").

As this Court previously determined, a review of the allegations of the Trustee's Count One reveals an attempt to liquidate a disputed contractual or quasi-contractual claim. Such a claim may not sound as a Bankruptcy Code-created claim under 11 U.S.C. § 542, and it is the recommendation of this Court that the Motion to Dismiss of McLeskey be granted as to Count One of the Complaint.

### III.  Count Two:  Breach of Contract

In Count Two of the Complaint the Trustee asserts the McLeskey Defendants breached their contractual duty to Bay Vista under the McLeskey Notes (i) by presenting to the Foreclosure Trustee an incorrect and overstated payoff based upon a retroactive computation of the default rate of interest and late charges; and (ii) by accepting disbursement from the Foreclosure Trustee of such higher portion of the Foreclosure Sale proceeds. McLeskey asserts Count Two fails to state a claim upon which relief may be granted as three of the four promissory notes secured by the Bay Vista property were not made by Bay Vista and therefore, as to these instruments, the Debtor and the Trustee lack the contractual privity necessary to assert an action for breach of these notes.[8] The Trustee argues

---

[8] The Trustee sets forth in the Opposition Memorandum that "[a]ttached as 'Exhibit 4' to the Complaint is a copy of a $1,000,000.00 demand note executed by Bay Vista in favor of defendant McLeskey and Associates, LLC. The Goodman Letter, which is attached as 'Exhibit 6' to the Complaint quite plainly includes this $1,000,000.00 Bay Vista demand note in its recalculations of the inflated McLeskey Payoff." Opposition Memorandum at 7. McLeskey admits this promissory note referred to by the Trustee was in fact made by Bay Vista but that McLeskey did not and does not now assert any right to a default rate of interest under the terms and conditions of this instrument.

any requirement of contractual privity to assert a claim of overpayment on the three notes that were

not executed by Bay Vista is negated by two statutory enactments.

### A.  Section 55-22 of the Code of Virginia

The Trustee principally relies upon the provisions of Section 55-22 of the Code of Virginia,

which provides:

> When person not a party, etc., may take or sue under instrument.  An immediate estate
> or interest in or the benefit of a condition respecting any estate may be taken by a
> person under an instrument, although he be not a party thereto; and if a covenant or
> promise be made for the benefit, in whole or in part, of a person with whom it is not
> made, or with whom it is made jointly with others, such person, whether named in the
> instrument or not, may maintain in his own name any action thereon which he might
> maintain in case it had been made with him only and the consideration had moved
> from him to the party making such covenant or promise.  In such action the
> covenantor or promisor shall be permitted to make all defenses he may have, not only
> against the covenantee or promisee, but against such beneficiary as well.

Va. Code Ann. §55-22 (2008).

Judge Doumar has explored the effect of Virginia Code § 55-22:

> The sole issue before the Court is whether a noteholder (mortgagee) may
> obtain a judgment against one who has assumed payment of the note without first
> instituting foreclosure proceedings upon the property securing the note.  There is no
> privity of contract between the noteholder and the assumer.  This Court finds that a
> mortgagee need not first foreclose upon the property prior to obtaining a judgment
> against a subsequent purchaser who assumes in writing the obligation secured by the
> property, as there need be no privity of contract under the present third party
> beneficiary statute of Virginia. Va. Code § 55-22 (1981).

> . . . .

> With these concepts in mind the defendants citing the case of *Hubard v.
> Thacker*, 132 Va. 33, 110 S.E. 263 (1922), argue that no direct action at law by the
> mortgagee will lie against a subsequent purchaser.  Defendants are of the opinion that
> the mortgagee's recourse is to foreclose on the property and then institute equity
> proceedings for the deficiency, if any.

> A careful reading of the *Thacker* cases, *supra*, reveals that the cases involved
> the construction of Va. Code § 2415 (1887) which at that time read:

18

> . . . if a covenant or promise be made for the *sole benefit of a person
> with whom it is not made*, . . . such person may maintain in his own
> name any action thereon, which he might maintain in case it had been
> made with him only, and the consideration had removed from him to
> the party making such covenant or promise.

(emphasis added).  The statute, however, has since been amended so as to provide
that:

> . . . if a covenant or promise be made for the benefit, *in whole or in
> part*, of a person with whom it is not made, or with whom it is made
> jointly with others, such person, whether named in the instrument or
> not, may maintain in his own name any action thereon which he might
> maintain in case it had been made with him only and the consideration
> had moved from him to the party making such covenant or promise.
> In such action the covenantor or promisor shall be permitted to make
> all defenses he may have, not only against the covenantee or promisee,
> but against such beneficiary as well.

Va. Code § 55-22 (1981) (emphasis added).  The legislative history of these statutory
provisions reveal that the statute was amended, in part, in order to enable one not a
party to a contract but who is only a partial beneficiary rather than a sole beneficiary
to directly sue the promisor.  *See Blanton v. Keneipp*, 155 Va. 668, 156 S.E. 413, 416-
17 (1931); *Horney v. Mason*, 184 Va. 253, 35 S.E.2d 78, 80 (1945).

     As the mortgagor was a partial beneficiary of the deed of assumption, the
current statute permits the very cause of action which the plaintiff brings in this Court.
Utilizing this statute and applying a third party beneficiary theory, the plaintiff may
directly sue the defendants at law without resorting to foreclosure.

*Bankers Mortgage Corp. v. Jacobs*, 613 F. Supp. 1579, 1580-82 (E.D. Va. 1985).  *See also Blanton*

*v. Keneipp*, 155 Va. 668, 678, 156 S.E. 413, 416 (1931) ("The contention of the appellees that a

mortgage creditor cannot maintain a suit in chancery against a grantee who has assumed the payment

of the mortgage debt unless there have been such dealings between the mortgage creditor and the

grantee as to create a contract between them in respect to the grantee's personal liability for the

payment of the mortgage debt as to effect a novation of the original contract made between the

mortgagor and the mortgagee, is not sustained by the authorities."); *The Elm Co. v. Beaudreau*, No.

19

159530, 1999 WL 370387, at *2 (Va. Cir. Ct. Apr. 22, 1999) ("Accordingly . . . the servicer for the

Note, is an intended third party beneficiary of this contract, and is permitted to bring an action at law,

even though it is not specifically named in the [assumption] Deed.").

> The application of Section 55-22 is subject to limitation.  As Judge Turk has observed:

> > Thus, Virginia law  recognizes that a third party beneficiary to a contract may sue on
> > it if injured as a result of its breach.  There is a limitation, however, upon the
> > application of this statute.  In order to proceed on the third-party beneficiary contract
> > theory, the party claiming the benefit must show that the parties to a contract "clearly
> > and definitely intended" to confer a benefit upon him.  Thus, Code § 55-22 has no
> > application unless the party against whom liability is asserted has assumed an
> > obligation for the benefit of a third party.  Put another  way, a person who benefits
> > only incidentally from a contract between others cannot sue thereon.  The essence of
> > a third party-beneficiary's claim is that the others have agreed between themselves to
> > bestow a benefit upon the third party but one of the parties to the agreement fails to
> > uphold his portion of the bargain.

*City of Lynchburg v. Ins. Co. of Ireland*, No. 87-0181-L, 1990 WL 1232911, at *7 (W.D. Va. Aug.

24, 1990) (quoting *Copenhaver v. Rogers*, 238 Va. 361, 367, 384 S.E.2d 593, 596 (1989)).

> McLeskey advocates that this Court restrict its determination of any intent to benefit the

Debtor, Bay Vista, to the notes and the instruments securing the notes, which examination, McLeskey

asserts, will reveal no mention of the Debtor.  The Trustee instead urges this Court to look beyond

these instruments to ascertain any intent to benefit.

> Whether Virginia is a strict "four corners" jurisdiction for the purpose of determining intended

third-party beneficiary status is unclear.  *Compare Ratliff v. S & ME, Inc*., No. Civ. A. 1:05CV00020,

2005 WL 1923109, at *5 (W.D. Va. Aug. 8, 2005) ("[T]he rule in Virginia is that the court shall not

look outside the contract itself unless the court determines that the contract is ambiguous."), *with*

*Canal Ins. Co. v. Lebanon Ins. Agency, Inc.*, 504 F. Supp. 2d 113, 119, n.6 (W.D. Va. 2007)

("Virginia law applies the 'four corners' doctrine in determining whether one is an intended

20

beneficiary of a contract."), *and Bay Point Condo. Ass'n Bd. of Dirs. v. Mid-Atl. Ins. Corp.*, No. L00-948, 2000 WL 33595037, at *2 (Va. Cir. Ct. Sept. 20, 2000) (citations omitted) ("The provision sought to be invoked 'must have been inserted in the contract directly or primarily for his benefit . . .' The four corners of the contract evidence whether the contracting parties clearly and definitely intended to benefit a third-party directly.").

Perhaps the most cogent explanation of Virginia law in this regard has been supplied by Judge Williams:

> *Ward*, thus, stands for the proposition that a court *may* look outside the four corners of a contract to determine whether someone is a third-party beneficiary of a contract. *Ward*, 435 S.E.2d at 635 n.4. *Ward*, however, does not provide guidance as to *when* a court should look outside of a contract to determine third-party beneficiary status. The Virginia Supreme Court addressed this issue in *Aetna Cas. and Sur. Co. v. Fireguard Corp.*, 249 Va. 209, 455 S.E.2d 229 (Va. 1995). This case involved an insurer, Aetna, as a subrogee of its insureds and owner of a building project involving construction of an apartment building, that brought suit against a subcontractor, alleging that the subcontractor had agreed to indemnify the owner of the building project in a contract between subcontractor and general contractor. *Aetna*, 455 S.E.2d at 229-230. The trial court granted Fireguard's motion for summary judgment based on its conclusion that Aetna, as subrogee of the owner of the property, was not a third-party beneficiary to a contract between Fireguard and the general contractor. *Aetna*, 455 S.E.2d at 230.

> On appeal, Aetna argued both that it was a third-party beneficiary on the face of the contract, and that "'at worst'" the contract was ambiguous and Aetna should have been allowed to produce evidence on the issue. *Aetna*, 455 S.E.2d at 231. In ascertaining whether the trial court should have looked outside the terms of the contract to decide whether Aetna was a third-party beneficiary, the Virginia Supreme Court held:

>> When a contract is complete on its face and is plain and unambiguous in its terms, a court is not free to search for its meaning beyond the contract itself. When a contract is ambiguous, however, a court should resort to parol evidence to ascertain the true intention of the parties. An "ambiguity" is defined as "'the condition of admitting of two or more meanings, of being understood in more than one way, or of referring to two or more things at the same time.'"

21

*Ratliff*, 2005 WL 1923109, at *4-5.

Applying these teachings, however, in the context of the instant matter of a subsequent owner of real property seeking to enforce the provisions of notes made by an earlier owner of the real property is problematic. More nearly factually similar to the instant matter is *Bankers Mortgage Corp. v. Jacobs*, discussed *supra*, where Judge Doumar found a mortgagee had been at least partially benefitted by the assumption of a note and deed of trust by a subsequent purchaser of the real property so as to permit the mortgagee to directly enforce the assumed obligation against the subsequent purchaser. Here it is axiomatic that the McLeskey Notes (with the exception of the note actually made by Bay Vista) do not mention any subsequent owner of the real property as an intended beneficiary of these instruments. Any "ambiguity" in these instruments is not apparent. However, at this stage of these proceedings, the circumstances of the acquisition of the Bay Vista Property by Bay Vista are not known, and specifically unknown is whether Bay Vista assumed any of the obligations of the original owners of the Bay Vista Property.[9] Judge Doumar determined that under Virginia law the payee of a note could bring an action for payment directly against the party who had assumed the obligation of the note, notwithstanding the absence of privity. The question remains as to whether the converse is true, that is, under Virginia law, whether a party who assumes the obligation of payment of a note may bring an action against the note payee for overpayment.

One Virginia decision has contemplated this issue. In *Lamont v. Seabury*, No. C151356, 2004

---

[9] A reading of *Bankers Mortgage Co. v. Jacobs* does not reveal whether at any point it was argued that the court could not look beyond the "four corners" of the note in question there to determine the third-party beneficiary issue; however, it appears the court did consider the documents under which the subsequent purchaser of the real property there assumed the mortgage in order to conclude the mortgagor was at least an intended partial beneficiary to directly enforce the assumed note against the subsequent purchaser.

WL 836018 (Va. Cir. Ct. Mar. 18, 2004), the plaintiffs agreed to assume and hold harmless the

original maker of a purchase money note secured by a deed of trust.  Subsequently, the plaintiffs

brought an action to recover overpayments made to the defendants under the note assumed by the

plaintiffs.  The defendants argued that they were not in privity with the Lamonts and accordingly the

Lamonts were without standing to recover the alleged overpayments.  The Lamonts contended

otherwise: "The Lamonts contended they have standing to sue the Seaburys for overpayments

pursuant to the note either because: (1) by assuming the McGinn note, they impliedly were in privity

with the Seaburys for payment of the note; or (2) because the Seaburys otherwise would be unjustly

enriched."  *Lamont*, 2004 WL 836018, at *2.  The court concluded the action was not barred, stating:

> Both parties relied upon *Hofheimer v. Booker*, 164 Va. 358 (1935), in which the
> Virginia Supreme Court addressed the relationship between a mortgagee and the
> purchaser of the mortgaged property, who had assumed payment of the mortgage as
> consideration for his purchase.  The Court declared:
>
>> It is well settled that a grantee of mortgaged premises, who has
>> purchased subject to a mortgage for which his grantee was primarily
>> liable, and has assumed the payment of the mortgage debt as a part of
>> the consideration, renders himself personally liable for the discharge
>> of the debt, *not only to the mortgagor but also directly to the
>> mortgagee, on the ground that, as between the parties to the deed, the
>> grantee thereby becomes the principal debtor for the mortgage debt,
>> and the grantor is thenceforth merely a surety for the debt. And where
>> there are successive grantees of the mortgaged premises, each
>> assuming payment of the mortgage debt, the mortgagee may hold
>> either or all of the grantees for the debt.*
>
> *Id.* at 364 (emphasis added) (citations omitted).  Although the above is *dicta*, it is
> plain that *Hofheimer* demonstrates that a mortgagee has a direct cause of action
> against a party assuming the maker's obligation to pay the mortgage debt.  The
> necessary implication of *Hofheimer* is that an implied contractual relationship arises
> between the mortgagee and the assuming obligor.  Under well settled principles of
> mutuality, such an assuming obligor may sue the mortgagee to obtain relief arising
> out of that implied contractual relationship.  Examples of such suits would include a
> suit to enjoin foreclosure, or, as is more relevant here, to recover mortgage payments
> involuntarily made.

For the reasons set forth above, the Seaburys' defense that the Lamonts do not have standing to seek damages in the amount of involuntary payments made is without merit.

*Lamont*, 2004 WL 836018, at *2-3 (footnotes omitted).[10]

In the instant matter, the specific circumstances of the acquisition of the Bay Vista Property by Bay Vista are presently unknown.[11]  The documents causing the transfer of the Bay Vista Property to Bay Vista are as yet unseen by this Court.  While the "four corners" of three of the four McLeskey Notes, attached as Exhibits 1, 2, and 3 to the Complaint, plainly do not contemplate Bay Vista as an intended beneficiary, the present pleadings also do not disclose the history of the transaction of the acquisition of the Bay Vista Property and whether the terms of such acquisition provide a basis for the maintenance of the present adversary proceeding by the Trustee on behalf of Bay Vista.  Accordingly, at this juncture, this Court is unable to conclude from the pleadings that, as to Count Two, "the plaintiff can prove no set of facts in support of [a] claim which would entitle

---

[10]  The Court is unable to locate any decisions that have considered the issue of the alleged lack of privity of contract as a defense to an assertion of overpayment where the subsequent owners of property did not assume the repayment of an existing mortgage but instead acquired the property "subject to" the existing mortgage.  Since the circumstances of the acquisition of the Bay Vista Property by Bay Vista are presently unknown, speculation as to what legal effect the acquisition of the Bay Vista Property by Bay Vista subject to the liens securing three of the four McLeskey Notes may have on the Trustee's claim is inappropriate.

[11]  The sole explanation thus far of the circumstances of the conveyance of the Bay Vista Property appears in paragraph 10 of the Complaint:

10.  The Debtor had acquired title to the Property in or about February, 2005 by deed from Mr. Stanley F. Tseng, in his capacity as trustee of the Tseng Trust Agreement No. 2.  As of the Petition Date, the Debtor's interest in the Property was subject to three deed-of-trust liens in favor of Mr. McLeskey and a fourth deed-of-trust lien in favor of M&A, LLC (collectively, the "McLeskey Liens").

Complaint ¶ 10.

24

him to relief," *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), and the concerns of McLeskey as to the lack of privity of Bay Vista as to three of the four McLeskey Notes[12] should be addressed after further factual development of the circumstances of the acquisition of the Bay Vista Property by Bay Vista.[13]

## B.  Section 55-59.4(A)(3) of the Code of Virginia

The Court is unable to locate any decisions where Section 55-59.4(A)(3) of the Code of Virginia, which provides the order for distribution and payment of the proceeds of a foreclosure,[14] has  been utilized to specifically challenge the amount and accuracy of a payoff of a note in the context of a foreclosure sale or to support any assertion for affirmative relief.[15]  A reading of the statute suggests that the complaint of the Trustee as to an alleged overpayment on the McLeskey Notes is not addressed by this statute.  While the Trustee complains that the Foreclosure Trustee did not pay over the foreclosure proceeds remaining after payment of the costs of foreclosure and the McLeskey  Notes but instead interplead them into state court, the gravamen of the wrong complained of by the Trustee is the alleged overpayment of the amounts due under the McLeskey Notes.[16]  As

---

[12]  McLeskey conceded at oral argument that the privity concern did not apply to the fourth note because that note was, in fact, made by the Debtor, Bay Vista.  *See supra* note 3.

[13]  This Court is unable to identify any Virginia decisions which have addressed whether privity of contract in a breach of contract action must be plead in the motion for judgment.

[14]  *See supra* note 6 for the text of Virginia Code § 55-59.4(A)(3).

[15]  In *Carter v. Countrywide Home Loans, Inc.*, Civil No. 3:07CV651, 2008 WL 4167931 (E.D. Va. Sept. 3, 2008) (slip copy), the plaintiff homeowners alleged various breaches of fiduciary duty on the part of their lender who foreclosed upon their residence and sought to amend their complaint to assert Virginia Code § 55-59.4(A)(3) as a statutory basis for the alleged breach of duty to file an accounts.

[16]  The transcript of a hearing conducted in Virginia state court and attached as Exhibit 8 to the Complaint in fact indicates that the interpleading of the surplus monies from the foreclosure sale of the Bay Vista Property was suggested by presiding Judge Canada and specifically consented to by then-counsel for Bay Vista.  Exhibit 8 to Complaint, at 13-17.

such, Section 55-59.4(A)(3) of the Code of Virginia does not specifically address the concerns of the

Trustee and provides no support for Count Two of the Complaint of the Trustee.

### C.  Summary as to Count Two

For the reasons stated above, it is the recommendation of this Court that the Motion to

Dismiss Count Two of the Complaint of the Trustee be denied.

### IV.  Count Three:  Judicial Estoppel

The Trustee concedes  there is no action properly entitled "Judicial Estoppel" but instead

prays that the caption of Count Three be permitted to be amended to state the Trustee asserts a claim

for "Unjust Enrichment."  The Trustee further argues that the substantive provisions of Count Three

as presently drafted do state a valid claim for recovery by the Trustee against McLeskey under the

theory of unjust enrichment.  Judge Merhige has explained the nature of the remedy of unjust

enrichment in Virginia:

> [A] quasi-contract is not a contract at all but rather an equitable remedy thrust upon
> the recipient of a benefit under conditions where that receipt amounts to unjust
> enrichment.  *See Marine Dev. Corp. v. Rodak*, 225 Va. 137, 300 S.E.2d 763, 766
> (1983); C. Kaufman, *Corbin on Contracts*, § 19, at 50 (Supp. 1989) (discussing
> distinction between implied-in-fact agreement and quasi-contract).  At issue here is
> only the latter concept.
>
> The quasi-contract is a plaintiff's remedy at law when the facts establish that
> a defendant has been unjustly enriched at the expense of the plaintiff, but where the
> facts fail to establish that the parties established any form of agreement.  To establish
> a quasi-contract a plaintiff generally must show three elements: (1) A benefit
> conferred on the defendant by the plaintiff; (2) Knowledge on the part of the
> defendant of the conferring of the benefit; and (3) Acceptance or retention of the
> benefit by the defendant in circumstances that render it inequitable for the defendant
> to retain the benefit without paying for its value. . . .

*Nossen v. Hoy*, 750 F. Supp. 740, 744-45 (E.D. Va. 1990).  *Accord*, *MBA Inc. v. VNU Amvest, Inc.*

(*In re MBA, Inc.*), 51 B.R. 966, 974-75 (Bankr. E.D. Va. 1985) (citing *Mass Transit Admin. v.*

*Granite Constr. Co.*, 57 Md. App. 766, 773, 471 A.2d 1121, 1125 (1984); *Everhart v. Miles*, 47 Md.

App. 131, 422 A.2d 28 (1980)). "The equitable doctrine of unjust enrichment rests upon the idea that

a man shall not be allowed to enrich himself unjustly at the expense of another." *Whitehurst v. Cho*,

Law No. 99231, 1992 WL 884510, at *1 (Va. Cir. Ct. Feb. 19, 1992) (citing *Kern v. Freed Co.*, 224

Va. 678, 680-81, 299 S.E.2d 363,364-65 (1983)). "A pleading for unjust enrichment must state that

the defendant received benefits he should not justly retain, enriching the defendant at the plaintiff's

expense or loss." *Id.* (citing *In re Wilson*, 90 B.R. 208, 211-12 (Bankr. E.D. Va. 1988)). The

existence of an express contract between parties precludes a recovery under a theory of unjust

enrichment:[17]

> The court in *Nossen* also stated, however, that "[t]he quasi-contract is a plaintiff's
> remedy at law when the facts establish that a defendant has been unjustly enriched at
> the expense of the plaintiff, *but where the facts fail to establish that the parties*

---

[17]  The assertion of a breach of contract claim by the Trustee in Count Two does not
preclude the alternative assertion by the Trustee of a quasi-contractual claim as to the three notes
on which Bay Vista was not a maker in Count Three at this stage of pleading because alternative
pleading is permitted by Rule 8 of the Federal Rules of Civil Procedure (as incorporated by
Federal Rule of Bankruptcy Procedure 7008):

> An unjust enrichment claim will fail as a matter of law where there is an express
> contract between the parties. "It is a well-settled principle under Virginia law that
> unjust enrichment claims arise only where there is no express contract." *Lane
> Construction Co. v. Brown & Root, Inc.*, 29 F. Supp. 2d 707, 727 (E.D. Va. 1998),
> *rev'd in part on other grounds*, 207 F.3d 717 (4th Cir. 2000). Although ACF has
> alleged the existence of a written agreement between the parties in other counts of
> the complaint, it is proper to allege an alternative ground for recovery, which
> might provide a basis for relief should MBNA successfully attack the validity of
> the agreement. *See* Fed. R. Civ. P. 8(e)(2).

*Atl. Credit & Fin. Special Fin. Unit, LLC v. MBNA Am. Bank, N.A.*, No. Civ.A. 700CV00846,
2001 WL 856704, at *5, n.6 (W.D. Va. June 4, 2001). *See also* note 19, *infra* (discussing the
preclusion of an unjust enrichment claim where a contract exists, and specifically noting that
because Bay Vista was a maker on one of the McLeskey Notes, a claim for unjust enrichment
cannot be made as to that note).

27

*established any form of agreement.*"  *Id.* at 744 (emphasis added).  *See also*, *Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp.*, 961 F.2d 489, 491 (4th Cir. 1992) (noting the "well settled" rule that a party may not recover in quantum meruit against another party with whom the claimant has an express contract on the same matter or subject in question); *Vollmar v. CSX Transportation, Inc.*, 705 F. Supp. 1154, 1176 (E.D. Va. 1989) ("Unjust enrichment claims can arise only where, unlike here, there is no express contract, whether written, oral or both. . . . '[T]here can be no recovery in quantum meruit where a valid express contract between the parties exists.  Parties to an express contract are entitled to have their rights and duties adjudicated exclusively by its terms.'") (quoting *In re Stevenson Assoc.*, 777 F.2d 415, 421-22 (8th Cir. 1985)).

*Commonwealth Group-Winchester Partners, L.P. v. Winchester Warehousing, Inc.*, Civil Action No.

5:07CV00024, 2007 WL 2570218, at *9 (W.D. Va. Aug. 31, 2007).[18]

---

[18]  Judge Jackson has discussed the nature of a claim of unjust enrichment under Virginia law:

Under Virginia law, unjust enrichment is a quasi-contract claim based on equity. *Kern v. Freed Co.*, 224 Va. 678, 680-81, 299 S.E.2d 363, 364-65 (1983).  There is some confusion among Virginia courts as to the status of unjust enrichment as a separate cause of action.  *Compare Makel v. Tredegar Trust Co.*, No. CH05-339, 2005 WL 3489768, at *2 n.16 (Va. Cir. Ct. Oct. 24, 2005) (stating that unjust enrichment can exist outside of the quasi-contract sense), *with Steele v. Batalo*, 62 Va. Cir. 102, 108 (2003) ("[T]his court is of the opinion that while unjust enrichment is recognized in Virginia as a rationale for implying a contract or trust . . . it is not a cause of action by itself.").  This court has held that unjust enrichment exists in Virginia only as an action of assumpsit for money had and received.  *John C. Holland Enters., Inc. v. J.P. Mascaro & Sons, Inc.*, 653 F. Supp. 1242, 1246 (E.D. Va. 1987) (stating that unjust enrichment in Virginia is based on a contractual relationship).  Although the Supreme Court of Virginia has never directly addressed an unjust enrichment claim standing alone, it has linked unjust enrichment to quasi-contract on several occasions.  *See Po River Water & Sewer Co. v. Indian Acres Club of Thornburg, Inc.*, 255 Va. 108, 114, 495 S.E.2d 478, 482 (1998); *Kern*, 224 Va. at 680-81, 299 S.E.2d at 364-65; *Rinehart v. Pirkey*, 126 Va. 346, 351, 101 S.E. 353, 354 (1919); *City of Norfolk v. Norfolk County*, 120 Va. 356, 364, 91 S.E. 820, 822 (1917).  In addition, multiple lower court decisions in Virginia apply a quasi-contractual analysis to unjust enrichment claims.  *See, e.g.*, *Primrose Dev. Corp. v. Benchmark Acquisition Fund I, LP*, 47 Va. Cir. 296, 298 (1998); *Singer v. Dungan*, No. 107888, 1992 WL 884986, at *4 (Va. Cir. Ct. Oct. 28, 1992) ("The remedy for unjust enrichment is the imposition of a quasi-contract on the party in receipt of the benefit.").

Judge Mitchell of this Court has delineated the range of remedies available in Virginia

relating to the challenge of a foreclosure sale:

> The statutory procedure for foreclosure of a deed of trust in Virginia offers a number
> of safeguards to the property owner and note obligors.  The property must be sold at
> a publicly-advertised auction.  Va. Code Ann. §§ 55-59.1, 55-59.2, and 55-59.3, and
> 55-62.  The net proceeds of sale must be credited to the secured note and to any
> subordinate liens against the property, with the residue, if any, paid to the property
> owner.  Va. Code Ann. § 55-59.4(3).  The account of sale must be reviewed and
> approved by the commissioner of accounts of the circuit court for the city or county
> in which the property is located, and provision exists for court review if there is an
> objection to the account.  Va. Code Ann. §§ 26-15 and 26-32.  As an alternative to
> challenging the account of sale before the commissioner of accounts and filing
> exceptions with the court, an aggrieved party may file a bill in equity challenging a
> foreclosure trustee's proposed payments and settlement of accounts.  *Bradley v.
> Canter*, 201 Va. 747, 113 S.E.2d 878 (1960).

*La Femina v. Anderson* (*In re Anderson*), No. 95-15419, 1997 WL 1102027, at *7 (Bankr. E.D. Va.

Aug. 29, 1997).

In *Bradley*, beneficiaries of a second deed of trust purchased realty from trustees under a first

deed of trust at a foreclosure sale.  The realty purchasers brought a suit in equity to determine the

respective rights of the litigants as to the sale proceeds which the purchasers had paid into court.

Specifically, the purchasers contended the proposed settlement by the trustees included disbursements

which were excessive.  The Supreme Court of Virginia concluded the availability of statutory relief

did not preclude the assertion of equitable jurisdiction to resolve a disputed accounting:

> The court under its broad equity powers had jurisdiction to entertain the bill
> of complaint and give equitable relief.  A copy of the trustees' proposed settlement
> account was filed as an exhibit with the bill.  It was alleged in the bill that the
> accounting was improper, unlawful, and excessive; that a demand for settlement had
> been made by the trustees for the next day; that the trustees would make immediate
> disbursement of the funds in accordance with the proposed accounting, and that in

---

*The Christian Broad. Network, Inc. v. Busch*, Civil Action No. 2:05cv558, 2006 WL 2850624, at
*7 (E.D. Va. Oct. 3, 2006).

such event many suits would be required to recover the disbursements made and later found to be excessive or unlawful.  It further alleged that the proposed disbursements would diminish the credit to which complainants were entitled toward satisfaction of the obligation secured by their second deed of trust which had been reduced to judgment and that some of the judgments to be obtained would be uncollectible and thus the complainants would suffer irremediable loss.  These allegations established grounds for equitable relief.

Defendants argue, however, that the charges complained of were subject to the control of the commissioner of accounts; that complainants had the right to challenge the account before him, (§§ 26-15 and 26-29, Code 1950) and that this procedure would have provided full, adequate and complete relief to them.  But the court's equitable jurisdiction was not thereby ousted.  Although a statute may furnish a remedy at law, that does not necessarily take away equity's jurisdiction over the subject.  In *Overnite Co. v. Woodfin*, 196 Va. 747, 752, 85 S.E.2d 217, we said: 'Courts of equity, having once acquired jurisdiction, do not lose it because jurisdiction of the same matters are given to law courts unless the statute conferring such jurisdiction uses prohibitory or restrictive words.'

*Bradley v. Canter*, 201 Va. 747, 751-52, 113 S.E.2d 878, 883 (1960).  Accordingly, the assertion of an equitable remedy outside of the statutory-based challenge of a foreclosure accounting has been recognized as legitimate by Virginia state courts, and the failure of the Trustee heretofore to file an objection to the first accounting filed by the Foreclosure Trustee does not preclude the assertion of an equitable claim by the Trustee here.  A review of the allegations of the Trustee is necessary to determine whether an equitable remedy has been sufficiently plead by the Trustee in Count Three.

The essential allegations of Count Three that the Trustee believes assert a claim for unjust enrichment against McLeskey are as follows:

50.  The McLeskey Defendants' assertion, by way of submission of the Goodman Letter to the Foreclosure Trustee, of the $4,054,927.50 amount of the McLeskey Payoff is entirely inconsistent with the $3,514,293.87 amount of the McLeskey Payoff represented to the State Court at the Injunction Hearing.

51.  Each of these inconsistent statements regarding the amount of the McLeskey Payoffs are factual in nature.

52.  The $3,514,293.87 amount of the McLeskey Payoff was accepted by the State

30

Court at the Injunction Hearing for purposes of denying the Wu Parties' request to
enjoin the Foreclosure Sale.

53.  The "recalculation" of interest and late charges at a retroactively applied default
rate was an intentional action taken by the McLeskey Defendants for purposes of
inflating their recovery from the Foreclosure Sale proceeds.

54.  Accordingly, under the "doctrine of judicial estoppel", the McLeskey Defendants
are bound by the lesser $3,514,293.87 amount of the McLeskey Payoff.  *See Havird
Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 292 (4th Cir. 1998) (listing required
elements for application of judicial estoppel doctrine).

55.  As chapter 7 trustee, Mr. Smith's strong-arm powers include the power and
authority to enforce the doctrine of judicial estoppel to obtain disgorgement from the
McLeskey Defendants of the $540,633.63 difference between the stated amount of the
McLeskey Payoff and the inappropriately higher amount actually paid to the
McLeskey Defendants by the Foreclosure Trustee.

Complaint ¶¶ 50-55.

While at times engulfed by the Trustee's assertion of a misrepresentation by McLeskey of the

amounts owed under the McLeskey Notes at a hearing conducted in state court, the Trustee

nonetheless appears to have facially stated a claim for unjust enrichment that would be cognizable

under Virginia law as to three of the four McLeskey Notes.[19]  The Trustee represents that a benefit

was conferred by Bay Vista upon McLeskey, *i.e.*, the retention by McLeskey of amounts in excess

of what allegedly was legally owed under the McLeskey Notes and the repayment of which was

---

[19]  Both parties agree that the Debtor, Bay Vista, was the maker of one of the notes.
Therefore, because a contract existed between the Debtor and McLeskey, the Trustee cannot
pursue a claim for unjust enrichment against McLeskey as to that note.  *See Commonwealth
Group-Winchester Partners, L.P. v. Winchester Warehousing, Inc.*, Civil Action No.
5:07CV00024, 2007 WL 2570218, at *9 (W.D. Va. Aug. 31, 2007) (discussing that the existence
of an express contract between parties precludes recovery under the theory of unjust
enrichment).

secured by the Bay Vista Property.  Complaint ¶ 25.[20]  These excess monies were retained by

McLeskey with knowledge of the benefit.  *Id.* ¶¶ 17, 26-28.[21]  Finally, the excess monies were

retained by McLeskey under circumstances that would be considered inequitable if the allegations

of the Trustee are true that the monies retained are in excess of the amounts legally owed under the

---

[20]  Paragraph 25 of the Complaint alleges, "From his assessment of the documents and
information relating to the McLeskey Notes, the Foreclosure Sale and the filed Accounting, Mr.
Smith has determined that the $4,054,927.50 amount remitted by the Foreclosure Trustee for
satisfaction of the McLeskey Notes was overstated by $540,633.63."  Complaint ¶ 25.

[21]  Paragraphs 17 and 26 through 28 of the Complaint allege as follows:

17.  According to the Accounting, the expenses of the Foreclosure Sale totaled
$37,522.30; the delinquent and prorated real estate taxes attributable to the
Property as of the date of the Foreclosure Sale totaled $31,334.88; and the
combined payoff on the McLeskey Notes (the "McLeskey Payoff") totaled
$4,054,927.50.  That left a balance of $876,215.32 (the "Surplus Funds")
apparently available for distribution to the Debtor, pursuant to its status as
"grantor" with respect to each of the McLeskey Liens.

. . . .

26.  The $4,054,927.50 stated amount of the McLeskey Payoff appears to be
based upon an October 20, 2005 letter ("the Goodman Letter") prepared by
Goodman & Company, LLP.  A copy of the Goodman Letter is attached as
Exhibit 6.

27.  The worksheets accompanying the Goodman Letter indicate that the
aggregate interest and late charges due under the McLeskey Notes was
"recalculat[ed]" to the aggregate amount of $1,453,921.71.  This recalculation
was accomplished by means of applying a default interest rate under the
McLeskey Notes retroactively from October 21, 2003.

28.  The $1,453,921.71 retroactively re-calculated interest and late charge figure
was then added to the aggregate $2,556,356.58 principal and $34,649.21
attorney's fees due (according to the Accounting) under the McLeskey Notes.

Complaint ¶¶ 17, 26-28 (footnote omitted).

32

terms of the McLeskey Notes. *Id.* ¶ 53.[22]  The awkwardness of the Trustee's pleadings in Count

Three complicate the Court's considerations here, and it is plain the Trustee likely originally believed

he was proceeding under what is a non-existent cause of action premised on "judicial estoppel."

Given the liberality of pleading sanctioned by Rule 8 of the Federal Rules of Civil Procedure,

however, the amendment of the caption of Count Three to provide that it asserts a cause of action for

unjust enrichment as to the three notes on which the Debtor was not the maker, combined with the

essential elements plead by the Trustee, provide McLeskey adequate notice of the claim asserted by

the Trustee for the return of the alleged overpayment on the McLeskey Notes.[23]  It is therefore the

recommendation of this Court that the Motion to Dismiss of McLeskey as to Count Three of the

Complaint be denied as to the three McLeskey Notes on which the Debtor was not the maker.  This

---

[22]  Paragraph 53 of the Complaint provides: "The 'recalculation' of interest and late charges at a retroactively applied default rate was an intentional action taken by the McLeskey Defendants for purposes of inflating their recovery from the Foreclosure Sale proceeds." Complaint ¶ 53.

[23]  The fact the Trustee has not filed a formal motion to amend Count Three is immaterial as the Trustee may amend the Complaint at this time without leave under Rule 15 of the Federal Rules of Civil Procedure (as incorporated by Rule 7015 of the Federal Rules of Bankruptcy Procedure) since McLeskey has not yet filed a responsive pleading to the Complaint.  *Foster v. DeLuca*, 545 F.3d 582, 583-84 (7th Cir. 2008) ( "Here, Foster [the plaintiff] filed her complaint and the defendants responded with a motion to dismiss pursuant to Rule 12(b)(6).  For purposes of Rule 15(a), a motion to dismiss does not constitute a responsive pleading. . . thus, 'an order dismissing the original complaint normally does not eliminate the plaintiff's right to amend once as a matter of right.'"); *Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc.*, 170 F. App'x 805, 810 (3rd Cir. 2006) (quoting Fed. R. Civ. P. 15(a)) ("The Federal Rules provide that '[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.'  As a Rule 12(b)(6) motion is not a responsive pleading under Rule 15(a), Chemtech remained entitled to amend its complaint when the District Court issued its opinion and order."); *Caine v. Hardy*, 943 F.2d 1406, 1420 (5th Cir. 1991) ("The first sentence of Rule 15(a) provides in relevant part that '[a] party may amend the party's pleading once *as a matter of course* at any time before a responsive pleading is served.' (emphasis added).  The defendants have never filed a responsive pleading in this case; only a Rule 12(b)(6) motion was filed.").

Court further recommends that leave be granted to the Trustee to amend the caption of Count Three to reflect the assertion of a claim for unjust enrichment as to those three notes, that such amendment occur within thirty days after the issuance of this Report and Recommendation (unless otherwise ordered by the United States District Court for the Eastern District of Virginia), and that McLeskey file a responsive pleading to the Amended Complaint within thirty days after the filing of any amendment to Count Three by the Trustee.  Finally, it is the recommendation of this Court that the Motion to Dismiss as to Count Three as it pertains to the note made by the Debtor, Bay Vista, be granted, as a claim for unjust enrichment may not be made where a contract exists.

## SUMMARY

With respect to the Motion to Dismiss the Complaint of the Trustee filed by McLeskey, the Bankruptcy Court recommends: (1) that the Motion to Dismiss Count One of the Complaint be granted and Count One of the Complaint be dismissed; (2) that the Motion to Dismiss Count Two of the Complaint be denied; and (3) that the Motion to Dismiss Count Three of the Complaint be denied as to the three McLeskey Notes on which the Debtor was not the maker, and be granted as to the note made by the Debtor, and (4) that the Trustee amend the caption of Count Three to assert a claim for unjust enrichment as to the three McLeskey Notes on which the Debtor was not the maker within thirty days after the issuance of this Report and Recommendation (unless otherwise ordered by the United States District Court for the Eastern District of Virginia).

Pursuant to Rule 9033 of the Federal Rules of Bankruptcy Procedure, the Clerk is ORDERED to electronically transmit and mail a copy of this Report and  Recommendation  to Peter G. Zemanian, counsel for the Trustee, to Jonathan L. Hauser, counsel for McLeskey, and to Debera F. Conlon, Assistant United States Trustee, on this 2nd day of February, 2009.

Any party objecting to this Report and Recommendation shall serve and file any such objections within ten (10) days after the date of the mailing of this Report and Recommendation with the Clerk of this Court. Any such Objection shall identify the proposed recommendations objected to and state the grounds for such objection.

**ENTERED this 2nd day of February, 2009, at Norfolk, in the Eastern District of Virginia.**

STEPHEN C. ST. JOHN
United States Bankruptcy Judge

35